Lewis, Plaintiff and Respondent, v. Bradley and others, Defendants and Respondents: Superior Mutual Insurance Company, Defendant and Appellant; and three other cases. [The four cases are Nos. 314, 315, 316, and 317.]

*June 1—June 26, 1959.*

For the appellant there was a brief by *Lehner, Lehner & Behling* of Oconto Falls, and oral argument by *J. P. Koberstein* of Madison.

For the respondents there was a brief by *Cohen & Parins* of Green Bay, for Gertrude Lewis; by *John A. Curtin* of Algoma for John Zimmerman and Amanda Zimmerman; by *Cornelisen, Denissen, Farrell & Kranzush* of Green Bay, for Emma Dalman; by *Everson, Ryan, Whitney & O'Melia* of Green Bay, for Raymond Bradley and the United States Fidelity & Guaranty Company; by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, for the Milwaukee Automobile Mutual Insurance Company; and by *Melvin Dewane* of Green Bay, for Raymond Bradley; and oral argument by *Robert J. Parins* and *R. J. Farrell.*

Hallows, J.   The sole question on this appeal is whether the appellant's automobile policy insuring the defendant while operating his Plymouth car insured him while driv-

ing the farm truck at the time of the accident. In its Insuring Agreements the policy provides in paragraph IV (a) (3):

"(a) Automobile. Except with respect to division 2 of coverage C and except where stated to the contrary, the word 'automobile' means:

"(3) Temporary Substitute Automobile—under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction."

The appellant contends: (1) The truck was not a substitute but an alternate automobile because the defendant had a key to the truck in his possession at all times and had the right to use the truck without first obtaining permission, and (2) there was no overt act of withdrawal of the Plymouth from normal use because of its breakdown.

*Western Casualty & Surety Co. v. Norman* (5th Cir. 1952), 197 Fed. (2d) 67, and *Everly v. Creech* (1956), 139 Cal. App. (2d) 651, 294 Pac. (2d) 109, are relied upon by the appellant for its first proposition. In the *Norman Case* a partnership owned several trucks and cars, including a Ford, which was not in good mechanical condition and therefore its use was limited to a particular construction project. One of the partners owned an Oldsmobile, which he had used for business trips and was using on the trip when the accident occurred. The court held the Oldsmobile was not a temporary substitute for the Ford because although the Ford was being repaired at the time there was no showing the Ford would have been used for the trip. Therefore the Oldsmobile was not actually used as a substitute. To the same effect see *State Automobile Ins. Asso. v. Kooiman* (D. C. S. D. 1956), 143 Fed. Supp. 614, 622.

Here, however, the facts and the only reasonable inference to be drawn therefrom show that if the Plymouth had not broken down it would have been used on the trip. The defendant attempted to use the Plymouth, and would have used it if it would have started. The defendant had never used the farm truck before for pleasure purposes. The availability of the keys to the truck at all times and the right to use the truck do not make the truck an alternative car when in fact it had not been used as such.

*Everly v. Creech, supra,* involved the standard newly acquired automobile paragraph, not the temporary-substitute-automobile paragraph involved here. In that case the policy covered a 1949 Hudson owned by Everly, who had been using for some months before the accident a 1936 Ford owned by another for the same purposes he had used his Hudson. The court held that the Ford replaced the Hudson; that Everly was the owner of the Ford within the meaning of the policy, and since he had not given the required notice under the newly acquired automobile clause, the policy was not in effect as to the Ford at the time of the accident. The type of use, possession, and control exercised by Everly of the Ford were essentially different from the possession, use, and control by the defendant of the farm truck. Neither of these cases is in point on its facts.

The purpose of this paragraph is to extend coverage temporarily and automatically, without the payment of an additional premium, to the insured to protect him when he uses an automobile not specified in the policy in place of the specified motor vehicle he intended normally to use but did not because of its withdrawal from use for a reason stated in the policy; *Lloyds America v. Ferguson* (5th Cir. 1941), 116 Fed. (2d) 920; *Farley v. American Auto Ins. Co.* (1952), 137 W. Va. 455, 72 S. E. (2d) 532.

From the cases the rule can be stated as follows: A substitute automobile within the meaning of the policy is one

actually but only temporarily used in place of the specified automobile, *i. e.,* for the same use the insured car would have been used except for its withdrawal from all normal use and while such withdrawal is because of its breakdown, repair, servicing, loss, or destruction. Where the named automobile specified in the policy was low on gasoline and had heavy snow chains on its tires, there was no breakdown and the car which was used was not a substitute for the named vehicle; *Iowa Mut. Ins. Co. v. Addy* (1955), 132 Col. 202, 286 Pac. (2d) 622. The fact that the auto which was used was more comfortable or in better working condition or more appropriate to the particular use did not qualify it as a substitute automobile or constitute a breakdown of the specified car in the policy; *Erickson v. Genisot* (1948), 322 Mich. 303, 33 N. W. (2d) 803. Such autos are not withdrawn from normal use for the reasons stated in the policy. However, in *Allstate Ins. Co. v. Roberts* (1958), 156 Cal. App. (2d) 755, 320 Pac. (2d) 90, it was held that although the Mercury named in the policy had been repaired but was still operating in a manner that the owner believed to be hazardous and should not be driven on the contemplated trip, it was withdrawn from normal use because of its breakdown when it was left at the home of the owner's wife with the keys and the wife's car used for the trip.

When the automobile specified in the policy is being operated for part of its normal use, the automobile not specified in the policy is not a substitute because the insured automobile has not been withdrawn from all normal use. *Pennsylvania Casualty Co. v. Suburban Service Bus Co.* (Mo. App. 1948), 211 S. W. (2d) 524; *Service Mut. Ins. Co. v. Chambers* (Tex. Civ. App. 1956), 289 S. W. (2d) 949; *State Farm Mut. Automobile Ins. Co. v. Bass* (1951), 192

Tenn. 558, 241 S. W. (2d) 568; *Erickson v. Genisot, supra* (no evidence the truck named in the policy was not being used).

*Fleckenstein v. Citizens' Mut. Automobile Ins. Co.* (1950), 326 Mich. 591, 40 N. W. (2d) 733, and *American Employers' Ins. Co. v. Maryland Casualty Co.* (4th Cir. 1954), 218 Fed. (2d) 335, are cases holding the automobile used was a temporary substitute not owned by the insured at the time of the accident. For other cases on the problem see Anno. 34 A. L. R. (2d) 936, 947, and *Kietlinski v. Interstate Transport Lines* (1958), 3 Wis. (2d) 451, 459, 88 N. W. (2d) 739.

In the case at bar the defendant normally used his Plymouth to go to and from work and for pleasure purposes. There is no evidence that he used it for any farm purposes. The farm truck was normally used by the defendant solely for farm purposes when he was working for his father and not for his personal use. There was no connection between the use of the farm truck on this Sunday afternoon and any farm purpose. No permissible inference from the evidence can be drawn that the defendant would have used the truck if his Plymouth had not broken down. He had no choice of using either car for his pleasure trip; his own auto would not start. There is no evidence of any past conduct that the truck was used as an alternative car. Actualities, not possibilities, determine whether an automobile is a substitute automobile under the policy.

The appellant further contends there was no overt act of withdrawal of the Plymouth from normal use. The policy does not require an overt act of withdrawal by the insured. It describes the condition which may be proved in many ways. An overt act by the insured is only one method. To

withdraw the insured automobile from normal use it is not necessary that the automobile be in a garage or a service station. Obviously if the car is in a garage for repair or for service, there is an overt act showing withdrawal. If an automobile can be operated, some overt act is required to prove the condition of withdrawal; *Allstate Ins. Co. v. Roberts, supra; Erickson v. Genisot, supra.* Likewise the withdrawal must be for the reasons stated in the policy. However, this clause cannot be so narrowly applied to a breakdown as to require that the automobile must be in a garage before it is considered withdrawn from normal use. When an automobile is lost or destroyed, it is withdrawn from the insured's normal use of it by that fact without the consent or act of the insured. A car which will not run at all withdraws itself from normal use when such fact is recognized by the insured, as the defendant did here. The inability of a car to run may not be a withdrawal *per se.* In *Grundeen v. United States Fidelity & Guaranty Co.* (8th Cir. 1956), 238 Fed. (2d) 750, the court held there was no withdrawal from normal use of a truck which would not run, where the employee, without attempting to notify the insured, or to get a mechanic to fix the truck, or to obtain the use of another vehicle of the insured, used his own car for his employer's business without the insured employer's consent. The result of this case might better have rested on the ground that the truck was withdrawn but the employee had no authority to use his own automobile as a substitute for the truck.

The appellant contends that since the defendant's father owned the truck and was a member of the same household as the defendant, the truck is not covered because of the provisions relating to use of other automobiles. The policy provides in the Insuring Agreements:

"V. Use of Other Automobiles:
"(d) This Insuring Agreement does not apply:
"(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse; . . ."

The appellant argues that this limitation on coverage applies to a temporary substitute automobile covered under Insuring Agreement IV (a) (3). We cannot agree with this contention. The two insuring agreements refer to entirely different fact situations. The temporary-substitute-automobile coverage is expressly limited to exclude only an automobile owned by the named insured or his spouse if she is a resident in the same household. The use-of-other-automobiles coverage applies to a situation where the car is not a substitute automobile and such coverage is expressly limited to exclude an automobile owned by or furnished for regular use to the named insured or any member of the same household, among other provisions.

If the use-of-the-other-automobiles paragraph in the defendant's policy were applicable to the facts here there would not be any liability under such coverage because Thomas Bradley, the father and owner of the truck, and the defendant were members of the same household. This court recently construed this provision, or one substantially the same, in *Lontkowski v. Ignarski* (1959), 6 Wis. (2d) 561, 95 N. W. (2d) 230. The only difference in the limiting clause in the *Ignarski Case* was the phrase "his household" instead of "same household." In the *Ignarski Case* this court construed "his household" to mean "same household."

The phrase "any automobile" appearing in the Insuring Agreements, Use of Other Automobiles, V (d) (1) does not apply to or include a substitute automobile covered by the

Insuring Agreement IV (a) (3) and the limiting language in V (d) (1) must be confined to that paragraph.

We conclude that at the time of the accident the farm truck driven by defendant Raymond Bradley was a temporary substitute automobile under and covered by the terms of the policy of the appellant.

*By the Court.*—Judgments affirmed.

MARTIN, C. J., took no part.