## Swift v. Nationwide Mutual Insurance Company

*James A. Stranahan, 3rd,* for plaintiff.

*George Hardy Rowley,* for defendant.

McKAY, J., March 25, 1963.—This case is before the court upon preliminary objections in the nature of a demurrer filed by defendant to plaintiff's amended complaint. From the averments set forth in the amended complaint, the following facts are either stated or could be inferred:

In January of 1961, plaintiff was the owner of a 1959 Plymouth automobile which was covered by a liability insurance policy issued by defendant company. At that time, plaintiff's car was in need of repairs and when plaintiff's son Wayne A. Swift returned to his army camp from a leave of absence, he took plaintiff's automobile with him, either to "repair or have repaired the said Plymouth automobile" and left his own car, a 1956 Chevrolet, for his father to use.

In March of 1961, before the Plymouth had been returned, plaintiff's daughter, while operating her brother's Chevrolet, was involved in an automobile accident with one William Lunn, as the result of which accident a judgment was entered against plaintiff in the amount of $2,000, and in addition, he incurred attorneys' fees in the amount of $400 and the costs of suit in the amount of $58.40. Defendant insurance company refused to defend plaintiff in that action or to reimburse him for the judgment and expenses incurred, whereupon the present action was filed. Defendant's demurrer is based upon the contention that plaintiff's policy did not cover either the 1956 Chevrolet or plaintiff at the time of the accident.

The pertinent provisions of the policy, a copy of which is attached to the amended complaint, are as follows:

"Insurance afforded under:

(1) Coverages A, B, C (1), C (2) and D (1) shall also apply to:

(a) A land motor vehicle not owned by the Policyholder, while temporarily used as a substitute for the

described automobile when withdrawn from normal use because of breakdown, repair, servicing, loss or destruction . . .

(3) Coverages C(1), C(2) and D(1) shall extend to:

(a) the Policyholder first named in the Declarations if an individual, and to his spouse and relatives of either if a resident of the same household, while using any other land motor vehicle except a temporary substitute land vehicle. . . .

"Provided as to (3) immediately preceding, such other land vehicle: . . .

"(ii) is not furnished for regular use to such Policyholder or a member of the same household . . ."

Defendant contends that the "automobile mentioned in plaintiff's amended complaint was not being 'temporarily used as a substitute' for the insured automobile at the time of the accident" and, further, that "the use of the motor vehicle involved in the accident does not meet condition (ii) of Section 6 of the policy in that, as established by plaintiff's amended complaint, it was furnished for regular use to the plaintiff."

Two questions are presented: (1.) Whether the automobile involved in the accident was a "temporary substitute" automobile within the meaning of section VI (1) of the policy; (2.) whether the operator of the automobile was covered under the "other automobiles" provision of the policy, section VI (3).

The policy covers a motor vehicle not owned by the policyholder "while temporarily used as a substitute for the described automobile when *withdrawn from normal use because* of breakdown, *repair, servicing,* loss or destruction. . . ." (Italics supplied.)

The amended complaint avers in paragraph 6 that "Wayne A. Swift in January of 1961 while on leave from his Army Camp, left his 1956 Chevrolet automobile with W. A. Swift at R. D. No. 5, Greenville, Penn-

sylvania, and took said 1959 Plymouth sedan owned by W. A. Swift back to his Army Camp *in order to repair said 1959 Plymouth sedan or to have it repaired.*" (Italics ours.)

In considering the pleadings in the light most favorable to plaintiff, as we must,[1] and faced with plaintiff's averment that the 1959 Plymouth was removed from plaintiff's premises in order to repair it or to have it repaired, we cannot hold that as a matter of law the 1956 Chevrolet automobile was not a "temporary substitute" within the meaning of the policy, and, hence, was not covered by it. While it is true that three months appears to be a somewhat lengthy time for a car to be withdrawn from normal use for the purpose of repairs, it is possible that evidence may be produced at the trial from which the jury could find that under all circumstances the 1959 Plymouth was, in fact, withdrawn from normal use *because of repair or servicing.*

While we do not find any authority in Pennsylvania construing the temporary substitute clause of the policy involved in this case, or a comparable one, cases in other jurisdictions support our conclusion.

In the case of Allstate Insurance Company v. Roberts, 156 Cal. App. 2d 755, 320 P2d 90 (1958), the court held that the provision for coverage of a substituted vehicle is for the insured's benefit and is to be construed liberally in favor of the insured. In that case, plaintiff used an automobile owned by his sister for an errand because his insured car was not running properly. The court held that it was a question of fact whether the insured car was withdrawn from normal use because of its breakdown.

---

[1] The question raised by a demurrer is whether upon the facts averred in the pleading being attacked the law says with certainty that the claim is no good, and if there is any doubt as to whether the demurrer should be sustained, it should be resolved against the objecting party: 4 Standard Pa. Prac. §36; Sun Ray Drug Co. v. Lawler, 366 Pa. 571.

In the case of Mid-Continent Casualty Company v. West (Okla. 1959), 351 P 2d 398, the court went so far as to hold that a substitute car was covered by insurance under a comparable clause providing for temporary substitution when it would be imprudent to use the insured car because of its condition (holes in the tires).

In Lewis v. Bradley, 7 Wis. 2d 586, 97 N. W. 2d 408 (1959) the court, construing a temporary substitute clause comparable to the one in the present case, held that a farm truck was a substitute automobile for a pleasure trip when the insured's automobile would not start.

All of these cases are stronger in their facts than the instant one and are ample authority for plaintff's contention that under the facts pleaded in the complaint, in the instant case, the jury could find that the son's car was a temporary substitute for the insured car owned by plaintiff which had been withdrawn from normal use for repairs.

The cases in other jurisdictions cited by defendant, which construe the language before us in favor of the insurer, are distinguishable in their facts from the present case.

In Iowa Mutual Insurance Company v. Addy, 132 Colo. 202, 286 P2d 622 (1955), the insured drove an automobile owned by his employer instead of his own vehicle which was insured, merely because the latter was low on gasoline and had on heavy snow chains which were unsuitable for the trip he was making. Obviously, the insured car was not withdrawn because of breakdown or repairs.

In State Farm Mutual Automobile Insurance Company v. Bass, 192 Tenn. 558, 241 S. W. 2d 568 (1951), the insured used a substitute trailer simply because it was larger and in a better state of repair than the trailer covered by the policy.

In Service Mutual Insurance Company v. Chambers Tex. Civ. App.), 289 S. W. 2d 949 (1956), the insured, who used a particular winch truck and trailer in his business of moving houses, rented another truck because the winch was broken on his insured truck. The rented truck was involved in an accident while hauling a house *while the insured truck was leading the way.*

In Erickson v. Genisot, 322 Mich. 303, 33 N. W. 2d 803 (1948), the insured borrowed a car to make a 50-mile trip because his insured truck was in a poor state of repair and he did not consider it fit for a drive of such length. It was not, of course, withdrawn from normal use for repairs.

In Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company v. Robertson (CA 4 1958), 259 F. 2d 389, a husband and wife who were not living together exchanged cars so that he might make repairs upon the wife's car. After the husband had repaired the car, but before he had returned it to his wife, she was involved in an accident while operating his automobile. While in that case judgment was entered for the insurer, the court stated, at page 391: "Whether Mrs. Robertson's car was so withdrawn from normal use at the time of the accident is of course a question of fact." In the present case the facts as to when the repairs to the insured car were completed do not appear.

So far as the issue of temporary substitute automobile is concerned, then, the demurrer must be overruled and the issue submitted to the jury.

With respect to the second question, whether plaintiff was also covered under the "other automobiles" provision of the policy, clause VI (3) of the policy provides that coverage shall extend to the policyholder and his relatives if a resident of the same household while using "any other land motor vehicle" except a

temporary substitute motor vehicle . . . provided . . . such other land motor vehicle . . . (ii) is not furnished for *regular use* to such policyholder or a member of the same household." (Italics ours.)

If at the trial the evidence is not sufficient to establish that the son's automobile was covered as a temporary substitute for the insured automobile, it will be necessary to decide whether plaintiff may recover upon the alternate theory that he was covered by the "other automobiles" provision of the policy, in which case the question whether the son's car was furnished to plaintiff for "regular use" will have to be faced. It is not necessary, however, to decide this question in order to dispose of the preliminary objections before us. Since plaintiff has alleged a good cause of action under one theory, it is immaterial whether he has a good cause of action under an alternate theory.

### Order

Now, March 25, 1963, the preliminary objections filed by defendant are overruled and it is ordered that defendant file an answer to the amended complaint within 20 days of receipt of notice of this order.