STROZEWSKI, Plaintiff and Respondent, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant and Appellant: SCHOENFELD, Defendant and Respondent. [Case No. 81.]

KAHN (Dennis), by Guardian *ad litem,* and others, Plaintiffs and Respondents, v. SCHOENFELD, by Guardian *ad litem,* Defendant and Respondent: STROZEWSKI and others, Defendants and Third-Party Plaintiffs and Respondents: AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Third-Party Defendant and Appellant. [Case No. 82.]

KAHN (Joseph), and others, Plaintiffs and Respondents, v. MARYLAND CASUALTY COMPANY and others, Defendants and Respondents: AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant. [Case No. 83.]

*Nos. 81–83. Argued February 3, 1970.—Decided March 3, 1970.*
(Also reported in 174 N. W. 2d 550.)

126

For the appellant there were briefs and oral argument by *John W. Emmerling* of Milwaukee.

For the respondent Gerald E. Strozewski there was a brief and oral argument by *Charles Saggio* of Milwaukee.

For the respondent Larry Wayne Schoenfeld there was a brief by *William J. Calvano*, attorney, and *Anthony J. Brondino* of counsel, both of Milwaukee, and oral argument by *Mr. Calvano*.

For the defendants third-party plaintiffs-respondents Gerald Strozewski and Maryland Casualty Company there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane*, attorneys, and *James W. Lane* of counsel, all of Milwaukee, and oral argument by *James W. Lane*.

HEFFERNAN, J. The briefs of the parties make it apparent that the only question on this appeal is whether, in fact, the 1954 Oldsmobile driven by Larry was a "temporary substitute automobile." "Temporary substitute automobile," as defined in the policy of insurance:

". . . means an automobile or trailer while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

It is undisputed that the Buick had been withdrawn from normal use because it was in the garage for repair. The only question thus presented is whether the Oldsmobile was a substitute for the Buick. We are satisfied that it was not.

Respondents Gerald Strozewski and Maryland Casualty Company contend in their brief that the findings of the trial court must be sustained if they are supported by any credible evidence. That, of course, is not the proper test to be applied when reviewing the findings of the trial judge. Although the test urged is applicable in the case of a jury verdict, the relevant test herein is whether the findings were contrary to the great weight and clear

preponderance of the evidence. The respondents apparently conclude that the trial judge found that the use of the Buick in going to and from Larry's school was the normal use of that automobile. Had the judge so concluded, we would be obliged to decide on the basis of the evidence set forth above that the finding is against the great weight and clear preponderance of the evidence. Rather, the judge found that the normal use of the Buick was to convey Marvin Schoenfeld to work. In his findings the trial judge stated, "That instead of using the 1954 Oldsmobile to go to work, for which he normally used the Buick . . . ."

Taking this finding, which is the only one supportable by the facts, it is apparent that the Oldsmobile was not actually used as a substitute for the Buick. Had the Oldsmobile been used by the father to go to work in place of the disabled Buick, the Oldsmobile would clearly have been a substitute for the Buick, and there would have been coverage for the use under the policy.

The definition of "temporary substitute automobile" provides that the coverage for the substitute applies when the usual automobile is "withdrawn from normal use." The clear implication of this phrase, and it has been uniformly so construed, is that the substitute automobile must be actually used for the same purpose that the regular automobile would be used. Annot. (1954), 34 A. L. R. 2d 933, 950, points out:

"One of the basic elements of a 'substitution' provision is that the automobile claimed to be covered be actually used as a 'substitute' for the described automobile.

"Thus, for example, it must be shown that, absent one of the specified circumstances, the described vehicle would have been used for the trip on which the accident occurred."

In *Lewis v. Bradley* (1959), 7 Wis. 2d 586, 97 N. W. 2d 408, a policy provision in regard to temporary substitute automobiles was discussed by the court. The policy

definition, with the exception of minor variances not material to this case, is identical to the one in the Schoenfeld policy. Mr. Justice HALLOWS, speaking for the court, said at pages 591, 592:

"A substitute automobile within the meaning of the policy is one actually but only temporarily used in place of the specified automobile, *i.e.*, for the same use the insured car would have been used except for its withdrawal from all normal use and while such withdrawal is because of its breakdown, repair, servicing, loss, or destruction."

Mr. Justice HALLOWS pointed out that the coverage does not apply unless the other automobile was "actually used as a substitute."

*State Automobile Ins. Asso. v. Kooiman* (D. C. S. D. 1956), 143 Fed. Supp. 614, cited with approval in *Lewis v. Bradley, supra,* held that a trailer was not within coverage of the substitution clause where the evidence was entirely lacking that the insured tractor would have been used for the hauling in the course of which the accident occurred.

7 Appleman, *Insurance Law and Practice*, p. 95, sec. 4293.5, in discussing the policy provisions in question and relying on *Lewis v. Bradley, supra,* states:

"It is contemplated that the same use will be made of the substituted vehicle as would have been made of the one originally insured."

12 Couch, *Insurance* 2d, p. 271, sec. 45:232, points out:

"One of the basic elements of a 'substitution' provision is that the automobile claimed to be covered is actually used as a 'substitute' for the described automobile . . . .
"Thus it must be shown that, absent one of the specified circumstances, the described vehicle would have been used for the trip on which the accident occurred. A substitute automobile within the meaning of the substitute automobile policy clause is one actually but only temporarily, used in place of the specified automobile. That is,

for the same use the insured car would have been used . . . ."

A review of the testimony makes it perfectly clear that, had the Buick not broken down, the Buick would have been used, not by Larry to go to school, but by his father to go to work. Larry would, as the testimony shows, have used the Oldsmobile to go to school. This is the very car that he did use. The Oldsmobile was not in substitution of the Buick. It was used as it was normally used— by Larry to go to school. Had the father used the Oldsmobile, there clearly would have been a substitution for the Buick, and the coverage would have applied. In the instant case, however, the breakdown of the Buick was merely coincidental and had nothing to do with the use of the Oldsmobile. We therefore conclude that the Oldsmobile was not, in fact, substituted for the Buick as is required by *Lewis v. Bradley, supra,* and the coverage urged is not applicable.

*By the Court.*—Judgment reversed.