Kevin M. BARTLETT et al.

v.

AMICA MUTUAL INSURANCE CO.

No. 90–492–M.P.

Supreme Court of Rhode Island.

June 17, 1991.

**46**

Katherine Merolla, Asquith, Merolla, Anderson, Archetto & Kane, Providence, for plaintiffs.

Amy G. David, A. Lauriston Parks, Hanson, Curran & Parks, Providence, for defendant.

## OPINION

MURRAY, Justice.

This declaratory-judgment action was certified to this court by the Providence County Superior Court pursuant to G.L. 1956 (1985 Reenactment) § 9-24-25. The plaintiffs, Kevin M. Bartlett (Kevin) and his parents, seek to determine whether Kevin may recover under the uninsured-motorist coverage of his automobile insurance policy. We conclude that he may recover.

The facts in this matter are not in dispute. On November 14, 1986, Kevin was injured in a two-car collision in North Kingstown, Rhode Island. The accident occurred when Kevin was struck broadside by an uninsured motorist while passing through an intersection; the uninsured motorist was later charged with failure to obey a stop sign and refusal to submit to a chemical test. At the time of the accident Kevin was driving his mother's 1980 Ford Pinto because his own car, a 1966 Pontiac GTO, had failed to start that morning.

The Ford Pinto was insured by defendant, Amica Mutual Insurance Co. (Amica), under a policy issued to Kevin's parents. Kevin's GTO was insured by Amica under a separate policy in his own name. Pursuant to his insurance policy Kevin could recover up to $300,000 in uninsured-motorist benefits whereas his parents' policy limited uninsured-motorist coverage to $60,-000. After recovering $60,000 under his parents' policy, Kevin sought to recover under the uninsured-motorist coverage of his own policy on the ground that he had been driving his mother's car as a temporary substitute for his broken-down GTO. Amica denied coverage, asserting that Kevin's operation of a vehicle owned and insured by his parents precluded his recovering uninsured-motorist benefits under his own policy, regardless of the vehicle's characterization as a temporary substitute.

On April 27, 1990, Kevin and his parents filed a complaint in Superior Court against Amica, requesting that the court declare the Ford Pinto an insured vehicle under Kevin's policy. Following cross-motions for summary judgment, the matter came to be heard before a trial justice on September 17, 1990. The parties moved for certification of the entire action for determination to this court, and the trial justice granted the motions and ordered the case certified.

We have had numerous opportunities to discuss and debate our uninsured-motorist-coverage statute, G.L.1956 (1989 Reenactment) § 27-7-2.1. The issue presented by this case, however, is one of first impression in this state: whether a clause excluding the use of a motor vehicle owned by a family member from uninsured-motorist coverage applies to a vehicle used as a temporary substitute. After reviewing the purposes behind both the exclusionary clause and the temporary-substitute-vehicle provision, we conclude that Kevin is entitled to recover.

The definitions section of Kevin's policy states:

" 'Your covered auto' means:

1. Any vehicle shown in the Declarations.

\* \* \* \* \* \*

4. Any auto or trailer *you do not own* while used as a *temporary substitute* for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction." (Emphasis added.)

Amica concedes that Kevin was driving the Ford Pinto as a temporary substitute for his own disabled vehicle and that, therefore, his mother's Pinto meets the policy's definition of a covered auto. Nevertheless, Amica argues that the clear language of the policy precludes recovery of uninsured-motorist benefits when a vehicle owned by a family member is used as a temporary substitute.

The temporary-substitute-vehicle provision serves to provide

"coverage while a substituted vehicle not owned by the insured is being temporarily used, where the described automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction. It indicates the intention of the insurer to cover only one automobile of the insured and to avoid covering more than one automobile for a single premium.

"Its purpose is not to narrow or defeat coverage but to make the coverage reasonably definite as to the vehicles the insured intended normally to use * * *.

"The purpose is to give the insured additional temporary coverage when the insured can not use his vehicle scheduled under the policy." 12 G. Couch, *Cyclopedia of Insurance Law* 2d § 45:219 at 511–12 (rev. ed. 1981).

*See generally Home Indemnity Co. v. Godley*, 122 Ga.App. 356, 364, 177 S.E.2d 105, 112 (1970); *Nationwide Mutual Insurance Co. v. Fireman's Fund Insurance Co.*, 279 N.C. 240, 252–53, 182 S.E.2d 571, 579 (1971); *Farmland Mutual Insurance Co. v. Farmers Elevator, Inc.*, 404 N.W.2d 473, 476 (N.D.1987); *Grange Insurance Association v. MacKenzie*, 103 Wash. 2d 708, 712, 694 P.2d 1087, 1090 (1985); *Lewis v. Bradley*, 7 Wis. 2d 586, 591–92, 97 N.W.2d 408, 411–12 (1959). The temporary-substitute-vehicle clause should not be unreasonably extended to increase the risk, nor should it be narrowly applied against the insured. "An insurance company's legitimate interest is in preventing an increase in the quantum of risk without a corresponding increase in the premium." *MacKenzie*, 103 Wash.2d at 712, 694 P.2d at 1089.

In the uninsured-motorist-coverage section of Kevin's policy we find the following exclusion:

"We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:

1. While occupying, or when struck by, any motor vehicle *owned by you or any family member* which is not insured for this coverage under this policy." (Emphasis added.)

The purpose of this exclusionary clause is twofold: "(1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of non-owned vehicles." *Dairyland Insurance Co. v. Ward*, 83 Wash.2d 353, 359, 517 P.2d 966, 969–70 (1974). Amica contends that purpose (1) will be defeated if we allow Kevin to recover. We are unconvinced, however, that the rationale behind purpose (1) is at issue here. "The danger of the assumption of additional risks without an added premium contemplated by the [exclusionary] clause simply does not exist in the instant case. * * * Thus, this case does not present an abuse at which the exclusionary provision was directed." *Id.* at 359, 517 P.2d at 970.

■ When the language in an insurance contract is ambiguous or capable of more than one reasonable meaning, the contract will be strictly construed in favor of the insured and against the insurer. *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990). While this court should not impose ambiguity where such ambiguity does not exist, it is our duty to view the policy in its entirety and accord the words their plain, ordinary, and usual meaning. *Id.*

"[T]he proper inquiry is * * * whether the insurance policy contract would be meaningful to the layman who at his peril may be legally bound or held to

understand the nature and extent of its coverage. The language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense. * * * *Ambiguous exclusionary clauses, particularly, should be construed in the manner most favorable to the insured."* (Emphasis added.) *Ward*, 83 Wash.2d at 358, 517 P.2d at 969.

In *Ward* the court found the exclusionary clause ambiguous because of its confusing structure and its placement among the general-coverage provisions, rather than among other exclusionary provisions. The *Ward* court stated that it was the insurer's obligation to spell out any exclusion in clear and unmistakable language. *Id.* at 359, 517 P.2d at 969. Even though the exclusionary clause at issue in our present case is not ambiguous by itself, we find that two possible interpretations arise when the exclusionary clause is read together with the definition of a temporary substitute vehicle.

First, the exclusion may be intended to restrict Kevin from using as a temporary substitute any vehicle owned by him or his family. This is the interpretation that Amica would urge us to adopt. It is our considered opinion, however, that "where the equities do not strongly favor the insurance company, a policyholder should not be required to engage in such rigorous analysis to learn that there is no coverage by the carrier for the use of a substitute car." *Government Employees Insurance Co. v. Kligler*, 51 A.D.2d 992, 993, 380 N.Y.S.2d 741, 742 (1976), *rev'd*, 42 N.Y.2d 863, 366 N.E.2d 865, 397 N.Y.S.2d 777 (1977). Furthermore, the most obvious and practical choice for a temporary substitute vehicle would be one readily available with the permission of a family member. A spouse's car would be disallowed because the temporary substitute must be a vehicle that "you do not own," and a spouse is included in the policy's definition of "you." Here, however, we are dealing with a parent's car.

Second, the exclusionary clause may be intended to apply in all cases *except* when the vehicle is used as a temporary substitute. Thus, the temporary-substitute-vehicle provision would take precedence over the exclusionary clause. In *Lewis v. Bradley* the court held that the exclusionary clause did not apply to a situation involving a temporary substitute vehicle:

"The two insuring agreements refer to entirely different fact situations. The temporary substitute automobile coverage is expressly limited to exclude only an automobile owned by the named insured or his spouse if she is a resident in the same household. The use of other automobiles coverage applies to a situation *where the car is not a substitute automobile* and such coverage is expressly limited to exclude an automobile owned by or furnished for regular use to the named insured or any member of the same household, among other provisions." (Emphasis added.) *Lewis*, 7 Wis.2d at 595, 97 N.W.2d at 413.

If Amica had intended to exclude vehicles owned by family members from use as temporary substitutes, it could have defined the temporary substitute vehicle as a vehicle that *"you or a member of your family* does not own," thereby paralleling the language of the exclusionary clause. For examples of insurance policies that define temporary substitute vehicles to exclude family members' vehicles, see *Teter v. Corley*, 2 Kan.App.2d 540, 540, 584 P.2d 651, 652 (1978); *Fielding v. Casualty Reciprocal Exchange*, 331 So.2d 186, 188 (La. Ct.App.1976); *Bartholet v. Berkness*, 291 Minn. 123, 125, 189 N.W.2d 410, 411 (1971).

Thus we find that the exclusionary clause is susceptible of two possible meanings when read in conjunction with the temporary-substitute-vehicle provision, the first favoring Amica and the second favoring Kevin. In light of this ambiguity we are inclined to accept the second interpretation. *Streicker*, 583 A.2d at 552. Not only does it favor the insured, but it is also the more logical interpretation.

■ Amica contends that this case should be distinguished from other cases

that hold that an exclusionary clause does not apply to a temporary substitute vehicle because this exclusionary clause is contained in the uninsured-motorist-coverage section rather than the liability-coverage section. We do not find this contention persuasive. The contract provisions, particularly those delineating uninsured-motorist coverage, are to be interpreted in light of the public policy for which the Legislature enacted the uninsured-motorist-coverage statute: to protect a named insured against financial loss resulting from the operation of an uninsured motor vehicle. *DiTata v. Aetna Casualty and Surety Co.*, 542 A.2d 245, 247 (R.I.1988).

"The primary object[ive] remains indemnification for an insured's loss rather than defeat of his or her claim.

"In order fully to effectuate these purposes, this court has disallowed contractual limitations that curtail an insured's recovery in instances in which the insured has not recovered the amount of his or her actual loss." *Id.* at 247–48.

In our present case Kevin has been severely disabled through no fault of his own, he has recovered only a portion of the $300,000 to which he is entitled, and he is not attempting to recover any benefits in excess of $300,000. It would be unjust to deny him recovery of his full benefits in these circumstances. We therefore hold that Kevin is entitled to recover under the uninsured-motorist coverage of his insurance policy.

For the foregoing reasons the certified question is answered in the affirmative, the plaintiff may submit a claim under the uninsured-motorist clause of his policy, and the papers of the case are remanded to the Superior Court for denial of the defendant's motion for summary judgment and for further proceedings as warranted.