## NEW LONDON COUNTY MUTUAL INSURANCE COMPANY

v.

## Karolyn FONTAINE, Individually, and in her capacity as administratrix of the Estate of Leo Fontaine.

### No. 2010–49–Appeal.

Supreme Court of Rhode Island.

June 21, 2012.

Lauren D. Wilkins, Esq., for Plaintiff.

Joseph J. Altieri, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

In this case, we are called upon to determine the extent of uninsured motorist coverage provided under an automobile insurance policy issued to a husband and wife, both of whom suffered injuries at the hands of an uninsured motorist while riding on a motorcycle owned by the husband but not expressly identified in the policy at issue. The insurer, New London County Mutual Insurance Company (NLC or plaintiff), filed this action for declaratory relief seeking clarification of the rights and obligations of the parties pursuant to the policy it had issued to the defendants. Arguing that the policy language unambiguously excluded the defendants' claim for uninsured motorist benefits, NLC filed a motion for summary judgment, which was granted by the Superior Court. The defendants, Karolyn Fontaine, individually, and Karolyn Fontaine on behalf of the estate of her husband, Leo Fontaine, who died as a result of his injuries, appeal the grant of summary judgment and contend that the pertinent policy provision is ambiguous and should be construed in favor of coverage in this case.[1] For the reasons

---

1. In their respective briefs, the parties indicate to this Court that NLC and Karolyn Fontaine (Mrs. Fontaine) have settled any claims with respect to her personal injuries. Mrs. Fontaine's remaining individual claim under the policy is one for loss of consortium and derives from the claims of her husband's estate. Thus, Mrs. Fontaine, individually, and Mrs. Fontaine, in her capacity as the administratrix of her husband's estate, constitute two distinct defendants, and were named as such in the original complaint filed by NLC. How-

set forth in this opinion, we hold that the policy language explicitly excludes defendants' claims from coverage, and we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The material facts in this case are not in dispute. On August 31, 2008, Leo Fontaine (Mr. Fontaine) was involved in a collision with a motor vehicle while operating his Harley Davidson motorcycle along Aliens Avenue in Providence, with his wife, Karolyn Fontaine (Mrs. Fontaine), as a passenger. Both Mr. and Mrs. Fontaine were injured; however, Mr. Fontaine's injuries ultimately resulted in his death. Mr. Fontaine owned the motorcycle, which he insured under a policy issued by Foremost Insurance Company (Foremost). Neither the automobile involved in the collision nor the operator of that vehicle was insured. Consequently, Foremost paid to Mr. Fontaine's estate its policy limit of $100,000, the per-person limit for underinsured/uninsured bodily injury benefits under that policy (the Foremost policy).

At the time of the collision, Mr. and Mrs. Fontaine held a separate automobile insurance policy for two other vehicles—a 2005 Dodge Magnum and a 2004 Ford F–250. That policy, issued by NLC, provided both liability and uninsured motorist (UM) coverage [2] for the period of August 4, 2008, to August 4, 2009 (the NLC policy). Subsequent to the collision, Mrs. Fontaine and the estate of Mr. Fontaine submitted a UM claim under the NLC policy, seeking to recover for Mrs. Fontaine's loss of consortium and for Mr. Fontaine's injuries. As a result of this claim, NLC initiated an investigation of the accident; it revealed that the Harley Davidson motorcycle owned and operated by Mr. Fontaine was not listed as a "vehicle covered" under the NLC policy. Based on this circumstance, NLC determined that both the estate's claim and Mrs. Fontaine's derivative claim fell within an exclusion [3] that removed from UM coverage any bodily injury suffered by an insured "[w]hile 'occupying,' or when struck by, any motor vehicle owned by that 'insured' which is not insured for this coverage." Accordingly, NLC dis-

---

ever, the record on appeal reveals that, although the notice of appeal specified the appellants as "Karolyn Fontaine, individually and in her capacity as administratrix of Estate of Leo Fontaine," only one filing fee was remitted to the clerk of the Supreme Court. As this Court has steadfastly stated, and in accordance with Article I, Rule 5(a) of the Supreme Court Rules of Appellate Procedure, "[w]here there are multiple aggrieved parties who seek to appeal, each must pay a separate filing fee to prosecute their appeals properly." *Wolf v. National Railroad Passenger Corp.*, 697 A.2d 1082, 1084 n. 1 (R.I.1997). "The failure to do so, in the absence of excusal, will almost invariably result in the loss of that party's right to appeal[,] * * * [even if] the appeal is prosecuted by one attorney on behalf of multiple parties." *Id.* Although Mrs. Fontaine's individual claim under the policy is derivative in nature, a claim for loss of consortium is "separate and distinct" from claims of the

estate. *Hennessey v. Pyne*, 694 A.2d 691, 696 (R.I.1997) (quoting *Normandin v. Levine*, 621 A.2d 713, 716 (R.I.1993)). Thus, the filing of two fees was required in this case to properly perfect the appeals of both the estate and of Mrs. Fontaine. *See Riley v. Stone*, 900 A.2d 1087, 1090 n. 1 (R.I.2006); *Illas v. Przybyla*, 850 A.2d 937, 943 (R.I.2004). Consequently, Mrs. Fontaine, individually, is not a party to this appeal. Nevertheless, she may press her appeal in her capacity as the administratrix of Leo Fontaine's estate. We will continue to refer to the appellant as "the defendants."

2. The NLC policy provided for UM coverage in the amount of $250,000 per person and $500,000 per accident, as well as $5,000 in medical payment coverage per accident.

3. This exclusion shall hereinafter be referenced as the "owned but not insured" exclusion.

claimed UM coverage for any loss stemming from Mr. Fontaine's injuries.[4]

On January 23, 2009, NLC filed an action for declaratory relief in the Superior Court in an effort to clarify its obligations, if any, to Mrs. Fontaine and the estate, who continued to maintain a right to collect under the NLC policy. Given that no genuine issues of fact were in dispute, NLC filed a motion for summary judgment on May 22, 2009, requesting that the court (1) declare Mr. Fontaine as the owner of the Harley Davidson motorcycle; (2) find that, at the time of the collision, Mr. Fontaine was operating a motor vehicle owned by him and not insured under the NLC policy; (3) determine the "owned but not insured" exclusion to preclude UM coverage under the circumstances; and (4) declare that NLC had no duty to indemnify the estate for the loss or Mrs. Fontaine for any derivative damages. In opposition, defendants contended that the "owned but not insured" exclusion within the NLC policy was unclear and ambiguous and thus should be construed against the insurer to permit UM coverage.

Specifically, defendants argued that the exclusion lent itself to more than one reasonable interpretation based on the language "this coverage." The "owned but not insured" exclusion at issue constituted one provision of a three-page endorsement to the NLC policy, copyright-dated 2002, and specific to Rhode Island (the 2002 Rhode Island endorsement). This endorsement, titled "UNINSURED MO-TORISTS COVERAGE–RHODE IS-LAND," read in pertinent part as follows:

"I. Part C–Uninsured Motorist Coverage

"Part C is replaced by the following:

"INSURING AGREEMENT

"A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury':

"1. Sustained by an 'insured'; and

"2. Caused by an accident.

"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle'.

" * * *

"B. 'Insured' as used in this Part means:

"1. You or any 'family member'.

"2. Any other person 'occupying' 'your covered auto'.

"3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above.

" * * *

"EXCLUSIONS

"A. We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by any 'insured':

"1. While 'occupying', or when struck by, any motor vehicle owned by that 'insured' which is not insured for this coverage."

The 2002 Rhode Island endorsement replaced "Part C" of the NLC policy and, specific to the exclusion at issue, replaced what originally read as:

"A. We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained:

"1. By an 'insured' while 'occupying', or when struck by, any motor vehicle

---

4. As noted, NLC did settle Mrs. Fontaine's personal claim for injuries under the NLC policy's UM coverage.

owned by that 'insured' which is not insured for this coverage under this policy."

To support their opposition, defendants relied on the absence of the words "under this policy" in the 2002 Rhode Island endorsement version of the "owned but not insured" exclusion and argued that the phrase "this coverage," without the qualification of "under this policy," rendered the exclusion "improperly drafted and ambiguous." The defendants asserted that this language lacked "clarity and specificity," in that the exclusion could be read to apply to motor vehicles owned but not insured under the NLC policy or to vehicles owned but not insured under UM coverage in general. Urging an interpretation of the exclusion in the latter form based on this alleged ambiguity, defendants contended that any claims arising from Mr. Fontaine's injuries indeed were covered by the NLC policy because Mr. Fontaine had UM coverage for his motorcycle—the Foremost policy.

On July 21, 2009, a Superior Court justice heard arguments on NLC's motion for summary judgment. At that time, the hearing justice reserved ruling on the motion to review the policy language at issue. On September 22, 2009, the hearing justice issued a bench decision on the matter, deeming "[t]he policy language [as] clear and unambiguous" in view of the "context" and "surrounding policy framework," and noting that "[r]espectfully, * * * the defendant[s] * * * work[ed] hard to create an ambiguity where there [wa]s none."

The hearing justice also concluded that the exclusion did not contravene public policy, particularly in light of precedential authority from this Court dictating that "the coverage follows the vehicle and not the individual." Based on these determinations, the hearing justice granted NLC's motion for summary judgment.

As raised on appeal and as discussed *infra*, the hearing justice, in her decision, quoted language of the "owned but not insured" exclusion residing in the original NLC policy, and not the exclusion specified in the 2002 Rhode Island endorsement.

Final judgment was entered in favor of NLC on September 28, 2009. The defendants filed a notice of appeal on that same date.[5] On appeal, defendants challenge the hearing justice's determination that the exclusionary language upon which NLC based its disclaimer of coverage is clear and unambiguous.

## II

### Standard of Review

■ We review *de novo* a hearing justice's decision granting summary judgment. *Nunes v. Meadowbrook Development Co.*, 24 A.3d 539, 542 (R.I.2011) (citing *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 497 (R.I.2011)). "In such a review, this Court applies the same standards as the motion justice, and we

---

5. To properly portray the procedural posture of this appeal, we note that the parties came before this Court for oral argument on March 30, 2011, in accordance with an order directing the parties to appear and show cause why the issues on appeal should not be summarily decided. Following argument, this Court determined that cause had been shown and assigned the appeal for full briefing and argument pursuant to an order dated May 31,

2011. Subsequent to that order, the Property Casualty Insurers Association of America and the National Association of Mutual Insurance Companies sought leave to file a brief as *amici curiae*, which motion was granted by this Court on September 7, 2011. The parties to this appeal complied with briefing requirements and returned to this Court for full argument on January 26, 2012.

will affirm summary judgment 'if, when viewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' " *Henderson v. Nationwide Insurance Co.*, 35 A.3d 902, 905 (R.I.2012) (quoting *Trust of McManus v. McManus*, 18 A.3d 550, 552 (R.I.2011)). "The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of facts in dispute." *Higgins v. Rhode Island Hospital*, 35 A.3d 919, 922 (R.I.2012) (quoting *McManus*, 18 A.3d at 552). Here, however, the material facts of this case are undisputed, and the issue before us is one of contract interpretation. This Court employs a *de novo* review of such questions of law. *See Irene Realty Corp. v. Travelers Property Casualty Co. of America*, 973 A.2d 1118, 1122 (R.I.2009) ("a trial court's ruling as to [the alleged existence of ambiguity in a contract] is reviewed by this Court on a *de novo* basis").

### III

### Discussion

 It is well settled that this Court interprets the provisions of an insurance policy in accordance with the rules established for the construction of contracts. *See Beacon Mutual Insurance Co. v. Spino Bros., Inc.*, 11 A.3d 645, 649 (R.I.2011); *see also Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 425 (R.I.2009); *National Refrigeration, Inc. v. Travelers Indemnity Co. of America*, 947 A.2d 906, 909 (R.I. 2008). In so doing, we look within the "four corners of [the] policy, viewing it 'in its entirety, [and] affording its terms their plain, ordinary and usual meaning.' " *Town of Cumberland v. Rhode Island In-*

*terlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1215 (R.I.2004) (quoting *Casco Indemnity Co. v. Gonsalves*, 839 A.2d 546, 548 (R.I.2004)). "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." *Gregelevich v. Progressive Northwestern Insurance Co.*, 882 A.2d 594, 595– 96 (R.I.2005) (mem.) (quoting *Town of Cumberland*, 860 A.2d at 1215).

 "[W]e shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Lynch*, 965 A.2d at 425 (quoting *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I.1995)). "If the terms of the policy are ambiguous, subjecting them to more than one reasonable interpretation, 'the policy will be strictly construed in favor of the insured and against the insurer.' " *Id.* (quoting *Mallane*, 658 A.2d at 20). However, "[w]e refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Beacon Mutual Insurance Co.*, 11 A.3d at 649 (quoting *Lynch*, 965 A.2d at 425).

At issue in this case is the extent of the so-called "owned but not insured" exclusion in the UM coverage specified in the NLC policy. This Court has encountered this breed of exclusion on numerous occasions. In *Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005 (1978), a majority of this Court confirmed the validity of a provision that precluded coverage for an insured for any injury sustained while occupying a vehicle owned by the insured, but not insured under the policy.[6] In so holding, we concluded that

---

6. The exclusion in that case read as follows: " 'Exclusions: This policy does not apply: " '* * * " 'Under the Uninsured Motorists Coverage, (p) to bodily injury to an insured while occupying a highway vehicle (other than an insured automobile) owned by the named

the mandates set forth in G.L.1956 § 27–7–2.1,[7] Rhode Island's uninsured motorist law, did not preclude an insurer's ability to confine uninsured motorist coverage to those vehicles owned by an insured which are actually covered under the policy. *See Baker*, 119 R.I. at 741, 383 A.2d at 1008–09. Thus, we affirmed the trial court's judgment in favor of the insurer, which judgment precluded the defendant's UM claim—stemming from injuries sustained on her uninsured motorcycle—under her automobile liability policy. *Id.* at 743, 383 A.2d at 1010.

Similarly, in *Dellagrotta v. Liberty Mutual Insurance Co.*, 639 A.2d 980 (R.I. 1994), this Court upheld the applicability of an "owned but not insured" exclusion to a UM claim for injuries suffered by a mother while she was riding as a passenger in a vehicle owned by her adult son, who at the time resided with his parents. *Id.* at 980. The exclusion in *Dellagrotta* provided in pertinent part that the insurer would "not provide [u]ninsured [m]otorists [c]overage for bodily injury sustained by any person * * * [w]hile occupying, or when struck by, any motor vehicle owned by [the insured] or any family member which is not insured for this coverage under this poli-

cy." *Id.* Citing our earlier decision in *Baker*, we noted "that § 27–7–2.1 does not mandate the extension of uninsured motorist coverage to vehicles owned by policyholders but not insured by them." *Dellagrotta*, 639 A.2d at 980. Similar to the facts in the case at hand, the adult son's vehicle was insured by another policy, under which his injured mother recovered UM benefits prior to filing suit against her own insurer. *Id.* Deeming the exclusion at issue to be unambiguous, we affirmed the trial justice's application of the provision as written. *Id.* at 981.

Our opinion in *Nationwide Mutual Insurance Co. v. Viti*, 850 A.2d 104 (R.I. 2004), signifies a more recent addition to this jurisprudential lineage. In *Viti*, the defendant was injured in an accident while riding as a passenger on her husband's motorcycle. *Id.* at 105. After collecting insurance benefits from her husband's policy on the motorcycle, the defendant filed for UM benefits under her own separate automobile insurance policy with Nationwide. *Id.* Nationwide denied coverage based on an "owned but not insured" exclusion. *Id.* at 105–06. Specifically, the exclusion provided that "[c]overage does

---

insured or by any person resident in the same household who is related to the named insured by blood, marriage or adoption, or through being struck by such a vehicle.'" *Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 736, 383 A.2d 1005, 1006 (1978).

7. General Laws 1956 § 27–7–2.1 "requires insurance carriers to provide protection for those claimants who voluntarily contract with licensed carriers for liability coverage as against uninsured operators." *DiTata v. Aetna Casualty and Surety Co.*, 542 A.2d 245, 247 (R.I.1988) (citing *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 355–56, 223 A.2d 447, 450 (1966)). This Court has oft recognized that "[t]he purpose of enacting the uninsured-motorist coverage statute was to afford protection to the insured against 'economic loss

resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles.'" *McVicker v. Travelers Insurance Co.*, 785 A.2d 550, 553–54 (R.I.2001) (quoting *Pin Pin H. Su v. Kemper Insurance Companies/American Motorists Insurance Co.*, 431 A.2d 416, 419 (R.I. 1981)). However, we have also acknowledged that this legislative purpose does not reach so broadly so as "to guard against all economic loss." *Ladouceur v. Hanover Insurance Co.*, 682 A.2d 467, 470 (R.I.1996) (quoting *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 553 (R.I.1990)). Thus, we will impose "reasonable limitations * * * on the construction of the uninsured-motorist statute to 'afford [ ] insurers some financial protection' from unwarranted claims." *Id.* (quoting *Streicker*, 583 A.2d at 553).

not apply to * * * [b]odily injury suffered while occupying a motor vehicle a) owned by; or b) furnished for regular use of: you or a relative, but not insured for Auto Liability coverage under this policy." *Id.* at 106. Determining the provision to be clear and unambiguous and not repugnant to public policy, this Court declined the defendant's invitation to overturn its rulings in *Baker* and *Dellagrotta. Id.* at 107. We likewise rejected the defendant's attempt to distinguish her case based on her and her husband's unsuccessful effort to obtain coverage for the motorcycle from Nationwide prior to the accident. *Id.* at 108.

In 2005, this Court yet again encountered a defendant's challenge to an "owned but not insured" exclusion. In *Gregelevich,* 882 A.2d at 594, the husband-and-wife plaintiffs were injured while in a van involved in a collision with an uninsured motorist. The plaintiffs owned the van and insured it under a policy that lacked UM coverage. *Id.* at 594. Due to this gap in coverage, the plaintiffs filed a claim under a policy acquired from Progressive that covered two motorcycles owned by the plaintiff-husband. *Id.* Progressive denied the plaintiffs' claim because the van was a "motor vehicle" owned by the plaintiffs but not insured under the Progressive policy. *Id.* at 595. The plaintiffs argued that the exclusion applied only to "vehicles," as defined in the motorcycle endorsement, which definition limited "vehicles" to "any motorcycle, motorbike, motor scooter, motorized trike, or other land motor vehicle * * *[,]" such as an off-road all-terrain vehicle. *Id.* at 594, 595. Progressive countered that the provision "was not ambiguous because the policy clearly distinguishe[d] between those terms that are subject to the policy definitions and those that are not," based on the use of boldface type. *Id.* at 595. Because the term "motor vehicle" used in the exclusion

did not appear in boldface type, Progressive argued, the definition of "vehicle" was not limited to that specified in the motorcycle endorsement, and thus unambiguously included the plaintiffs' van for purposes of coverage exclusion. *Id.*

Although acknowledging that the Progressive policy was "complex," this Court ultimately deemed the exclusion to be unambiguous and "not beyond the comprehension of the ordinary consumer." *Gregelevich,* 882 A.2d at 596. Viewing the policy in its entirety, and affording the terms their "plain, ordinary and usual meaning," we held that the exclusion did indeed apply to the plaintiffs' van. *Id.* (quoting *Town of Cumberland,* 860 A.2d at 1215).

In this case, defendants endeavor to distinguish the "owned but not insured" exclusion at issue from those considered in the aforementioned cases based on the language "this coverage" employed in the provision. The defendants contend that, unlike the exclusions at issue in other cases, the exclusion here is lacking the qualifying phrase "under this policy." *See, e.g., Nationwide Mutual Insurance Co.,* 850 A.2d at 106 ("while occupying a motor vehicle a) owned by; or b) furnished for regular use of: you or a relative, but not insured for Auto Liability coverage under this policy"); *Dellagrotta,* 639 A.2d at 980 ("[w]hile **occupying,** or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy"); *Bartlett v. Amica Mutual Insurance Co.,* 593 A.2d 45, 47 (R.I.1991) ("[w]hile occupying, or when struck by, any motor vehicle *owned by you or any family member* which is not insured for this coverage under this policy"). The defendants maintain that the term "this coverage" equates to UM coverage in general, and that because the term is not qualified by the phrase "under this

policy," such coverage is not specific to the UM coverage under the NLC policy. Thus, defendants argue, because Mr. Fontaine's motorcycle *was* covered under the Foremost policy, their claim is not excised from UM coverage under the NLC policy by the "owned but not insured" exclusion in the 2002 Rhode Island endorsement. The defendants further aver that because the language "under this policy" existed in the original policy yet was deleted from the endorsement, an insured can only conclude "that it was deleted because it 'changes the policy.' "

When examining the language of an insurance contract for alleged ambiguity, we are mindful of "our duty to view the policy in its entirety and accord the words their plain, ordinary, and usual meaning." *Bartlett*, 593 A.2d at 47 (citing *Streicker*, 583 A.2d at 552). "[T]he proper inquiry is * * * whether the insurance policy contract would be meaningful to the layman who at his peril may be legally bound or held to understand the nature and extent of its coverage." *Id.* at 47–48 (quoting *Dairyland Insurance Co. v. Ward*, 83 Wash.2d 353, 517 P.2d 966, 969 (1974)).

Viewing the NLC policy in its entirety, and affording the words at issue their plain and ordinary meaning in the way that would be understood by "the ordinary reader and purchaser," we conclude that the "owned but not insured" exclusion applicable in this case is not ambiguous. *Town of Cumberland*, 860 A.2d

at 1215 (quoting *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 760 (R.I.1990)). We are convinced that aligning with defendants' proposed interpretation—that the term "this coverage" refers to UM coverage in general—conceives an ambiguity in the provision where none exists. The exclusion is positioned within the policy in Part C, the section addressing "Uninsured Motorists Coverage," and within the clearly marked segment titled "EXCLUSIONS." The use of the words "this coverage" refers to the UM coverage offered by the NLC policy as discussed in Part C—not to UM coverage in general. Moreover, the phrase "this coverage" is used in three additional provisions within the 2002 Rhode Island endorsement for UM benefits. In all of these instances, "this coverage" clearly means UM coverage under the NLC policy. For example, section B under "EXCLUSIONS" mandates that "[t]his coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law: 1. Workers' compensation law; or 2. Disability benefits law." Likewise, section B of "LIMIT OF LIABILITY" directs that "[n]o one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part B of this policy."[8] This repeated usage of the phrase "this coverage" throughout the UM benefits segment of the NLC policy further supports the unambiguous use of the term in the "owned but not insured" exclusion. As

---

8. Furthermore, we emphasize that a typical policyholder would understand from the declarations page of the NLC policy who exactly constituted the "named insureds" and which vehicles were listed as "vehicles covered" under the policy. This Court has opined "that '[t]he contents of the declarations sheet is of paramount importance because it is common knowledge that the detailed provisions of insurance contracts are seldom read by the consumer.' " *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995) (quoting *Sentry Insurance Co. v. Grenga*, 556 A.2d 998, 1000 (R.I.1989)). "[I]t is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage." *Id.* (quoting *Lehrhoff v. Aetna Casualty & Surety Co.*, 271 N.J.Super. 340, 638 A.2d 889, 892 (Ct.App.Div.1994)).

noted above, "[w]e refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present," and we shall not undertake such an exercise here. *Beacon Mutual Insurance Co.*, 11 A.3d at 649 (quoting *Lynch,* 965 A.2d at 425).

 "The purpose of [an 'owned but not insured'] exclusionary clause is two-fold: '(1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the infrequent use of non-owned vehicles.'" *Bartlett,* 593 A.2d at 47 (quoting *Dairyland Insurance Co.,* 517 P.2d at 969–70). A reading of the applicable "owned but not insured" exclusion in the NLC policy as proffered by defendants frustrates this legitimate purpose by increasing the risk insured by an insurer without allowing for a corresponding increase in the premium charged. Nor is such an increase in risk capable of actuarial calculation. The resultant imposition of such great uncertainty upon the insurer reveals defendants' proposed interpretation as one that renders an unreasonable result.

We do acknowledge that the hearing justice erred in her decision when she quoted the "owned but not insured" exclusion set forth in the original NLC policy, and not that of the 2002 Rhode Island endorsement that replaced Part C of the NLC policy, addressing UM coverage. However, our review of a trial court's ruling on a question of law is *de novo. Irene Realty Corp.,* 973 A.2d at 1122. Thus, the hearing justice's error does not preclude our affirmance of her decision granting summary judgment in favor of the plaintiff in this matter.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.