MOORE and Wife, Plaintiffs and Respondents, v. SUBURBAN MOBILE, INC., and others, Defendants and Respondents: FOREMOST INSURANCE COMPANY, Impleaded Defendant and Appellant.

*March 2—April 12, 1966.*

528

For the impleaded defendant-appellant there was a brief by *Chambers, Nash, Pierce & Podvin* of Wisconsin Rapids, and oral argument by *Dudley W. Pierce.*

For the plaintiffs-respondents there was a brief by *James Buchbinder,* attorney, and *Edward D. Schneiderman* of counsel, both of Milwaukee, and oral argument by *Mr. Schneiderman.*

For the defendants-respondents there was a brief by *Brazeau, Brazeau, Potter & Cole* of Wisconsin Rapids, and oral argument by *John M. Potter.*

FAIRCHILD, J. The circuit court found that a contract with Foremost was created by the dealings between Moore and Crotteau. Foremost takes no issue with the proposition that Crotteau, acting for Schmidt, had the authority to bind Foremost by an oral contract of insurance. Foremost asserts that, under the evidence, a contract could not have been formed because (1) Crotteau and Moore did not agree on the identity of the insurer, and (2) they did not agree on the risk insured against.

Mr. Moore testified that on May 1, 1964, he and Crotteau discussed insurance; Crotteau said the Moores were getting fire, theft and extended coverage, which would include wind, hail, theft and fire; Moore understood the name of the insurance company would be Continental Insurance Company. Moore testified that in connection with the bank loan on the trailer home he had purchased credit life insurance with the Continental Insurance Com-

pany (the record suggests this was actually Continental Assurance Company) and that it may be possible he was confused between the company issuing the credit life and the company issuing the fire, theft and extended coverage; that he asked Crotteau "What insurance company do you use?" and Crotteau replied "Continental;" (Crotteau testified that Suburban did, in fact, insure the trailers it owned with Continental Casualty Company) ; Moore said he had a health policy with Continental and had good relations with them; he did not hear the name of Foremost Insurance Company until after the loss. Moore testified that in computing the premium, Crotteau referred to a book.

Mr. Schmidt testified he was not a licensed insurance agent for any company but Foremost in 1964; that Foremost would not sell fire and theft insurance on a mobile home without also insuring against windstorm.

Crotteau testified he did not recall discussion with the Moores as to insurance coverage—"No, I don't know that there wasn't or that there was. There must have been a conversation, but I don't recall it." The "lienholder copy" of a Foremost printed form entitled "Information Blank" is in the record. Entries thereon described the mobile home purchased by the Moores. Crotteau testified that he filled it out May 1st, although he did not mail the original to Foremost until May 7th. He entered "$225.00" under the heading "Total cost" and opposite "Fire, Theft and Combined Additional Coverage" under the heading "Type of Insurance." He testified he computed the premium for four years by consulting the rate manual of Foremost. This is a small book, which is in the record. It shows that the premium for forty-eight months for F., T. & C. A. C.; V. S. I. for a mobile home selling at $5,300 is $265.25. On the same page there is an instruction "If V. S. I. coverages are not required deduct $40.00 from the above premiums." Crotteau described V. S. I. as a form of "skip insurance" which Moore did not need, and he

deducted the $40, calculating a premium of $225.25, which the Moores paid. According to the same manual "Combined Additional Coverage Includes: Hail, Windstorm, Explosion, Cyclone, Tornado, Falling Aircraft, Earthquake, Flood, Glass Breakage, Off Right-of-Way Collision, Malicious Mischief and Vandalism, etc. (Read your Policy)." The premium chart shows no premium for fire and theft coverage alone. It shows a premium for forty-eight months "Comp.; V. S. I." for a mobile home selling at $5,300 of $301.29 and states "Comprehensive Includes: Fire, Theft, and all other loss or damage to the Mobile Home or Travel Trailer except Collision or upset, subject to conditions and exclusions."

Crotteau also filled out a printed form entitled "Retail Instalment Contract and Statement of Transaction" signed by himself on behalf of Suburban, and by the Moores. The First National Bank of Wisconsin Rapids, the name which was printed on the form, financed $1,300 of the purchase price. Crotteau showed a premium of $225.25 in the appropriate space. The coverage was to be indicated by checking a box. He checked the box opposite "Fire and Theft," and did not check either "Comprehensive" or "Combined Additional Coverage." This is inconsistent with Moore's testimony as to the coverage he ordered, with the type of insurance indicated on the Foremost information blank, and with the computation of the premium. The indication on the instalment contract in these circumstances is only evidence and is not controlling as a matter of law. The contract we are concerned with in this case is the oral contract of insurance, if there was one, between the Moores and Foremost, and not the contract of purchase between the Moores and Suburban.

Foremost apparently concedes that Crotteau (acting for Schmidt) had authority to make an oral contract of insurance, binding on Foremost. Apparently it would also concede that if Moore had told Crotteau only that he

wanted certain insurance coverage, there could have been an insurance contract without Crotteau disclosing the name of the company. Counsel says, however, "This is a situation in which the evidence is undisputed that the plaintiffs requested insurance in a particular company— Continental Insurance Company—and the agent attempted, without their knowledge, authority or consent, to place the insurance in another company."

The circuit court interpreted the testimony and transaction differently, deeming that even if Moore mistakenly believed he was being insured by a company named Continental, the testimony did not sufficiently show that the identity of the insurer was a vital part of the transaction. The court took into consideration the nature of the dealings by which people obtain insurance through agents, frequently without being certain of the name of the insurer.[1]

Evidently the court did not believe that Crotteau represented to Moore that he was being insured by Continental, but that at most Moore misinterpreted some conversation about a company with Continental in its name, either in connection with the credit life insurance involved in the transaction, or the insurance which Suburban carried on its own property.

We conclude that the interpretation placed on the testimony by the court is a reasonable one. Surely it would be possible for a prospective insured to make it so plain that he wanted to deal with a specified insurer that he, at least, would not be bound to accept a policy issued by a different one, selected by the agent, but we do not think that element appears in the dealings in this case. Although Moore may have been pleased as a result of his mistaken impression that the insurer was one with which he had previously had a satisfactory relationship, there is no

[1] *United States Fidelity & Guaranty Co. v. Goldberger* (3d Cir. 1926), 13 Fed. (2d) 779, 780. See also: 44 C. J. S., Insurance, p. 995, sec. 238.

compelling inference that he would have preferred to obtain insurance elsewhere, had he been told the insurer was Foremost.

With respect to the coverage agreed upon, counsel for Foremost contends that "Crotteau did not understand that he was to insure the trailer against anything except fire and theft." They cite an answer by Crotteau on adverse examination that he told the Moores the type of coverage would be "Fire and theft through Foremost." They further rely on the indication Crotteau inserted in the instalment contract that the coverage would be fire and theft.

A number of other facts, however, tend to show that Crotteau and the Moores agreed upon fire, theft and combined additional coverage. Moore's testimony as to coverage is consistent with the definition of this coverage in the rate manual. This is the coverage indicated by Crotteau on the information blank. The premium charged and paid by Moore is the appropriate premium for this coverage for forty-eight months, the policy period indicated on the instalment contract. The rate manual and Schmidt's testimony indicate that Foremost does not insure mobile homes against fire and theft without the combined additional coverage, or comprehensive coverage.

For some reason the pleadings alleged an agreement for comprehensive coverage, and the findings reflect this nomenclature. As already indicated, it would appear that combined additional coverage rather than comprehensive was agreed upon and paid for, but the difference in nomenclature appears to be immaterial since the particular loss would be covered by either type of policy.

The finding of the court that insurance was effected with Foremost is not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.