ROESKE, and another, Plaintiffs-Respondents, v. DIEFEN-BACH, and another, Defendants-Respondents: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant: BAUER BUICK COMPANY, Third-Party Defendant-Respondent. [Case No. 75–36.]†

RABBE, Plaintiff-Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant: DIEFENBACH, and others, Defendants-Respondents. [Case No. 75–37.]†

*Nos. 75–36, 75–37. Argued October 4, 1976.—*
*Decided January 18, 1977.*
(Also reported in 249 N. W. 2d 555.)

† Motion for rehearing denied, with costs, on March 15, 1977.

For defendant-appellant and cross-respondent, State Farm Mutual Automobile Insurance Company, there were briefs by *John M. Swietlik* and *Kasdorf, Dall, Lewis & Swietlik*, and oral argument by *John M. Swietlik*, all of Milwaukee.

For defendants-appellants, Joseph G. Diefenbach, Aetna Insurance Company and third-party defendant-respondent, Bauer Buick Company, there were briefs by *Kluwin, Dunphy, Hankin & McNulty* and oral argument by *Mark A. Swartz*, all of Milwaukee.

For plaintiffs-respondents, Charles Roeske, Joanne Roeske and Cheryl Anne Rabbe, there was a brief by *John A. Fiorenza, Dominic S. Amato* and *Teper, Fiorenza,*

*Weiss & Teper, S. C.,* and oral argument by *Mr. Amato,* all of Milwaukee.

HEFFERNAN, J. The appeal and cross-appeal are from an interlocutory judgment which determined the question of insurance coverage prior to a trial on the merits of the case.

The July 4, 1971, accident which underlies this appeal involved a single vehicle, a 1971 Buick Electra driven by Joseph Diefenbach, who had earlier, on May 26, 1971, entered into a lease agreement with Bauer Buick Company. Passengers in the car sustained injuries. The judgment appealed from determined that the vehicle was afforded liability coverage by virtue of an oral contract entered into between Diefenbach and State Farm Mutual Automobile Insurance Company on May 26, 1971, and that contract, affording coverage of $250,000/$500,000, was in effect on July 4, 1971.[1] The court also found that Bauer Buick's automobile policy with Aetna Insurance Company was in effect and also afforded $250,000/$500,000 coverage, and that the proceeds of the two policies were to be prorated. The trial court also held that Aetna's "umbrella" policy was available for excess coverage in a sum not to exceed an additional $1,000,000.

We affirm the trial court's judgment in respect to the oral contract with State Farm Mutual Automobile Insurance Company, the applicability of the State Farm policy and the Aetna Mutual Automobile Insurance Com-

---

[1] The trial judge in the judgment stated that the policy in effect was the Exhibit 9 (the State Farm policy which afforded coverage in the amount of $100,000/$300,000, effective July 19, 1971). This finding of the trial judge is supported neither by the verdict nor the underlying facts. Clearly, the policy in effect was the oral insuring agreement of May 26, 1971. It would appear that this portion of the judgment resulted from an inadvertent and erroneous recitation of the jury's verdict.

pany, and the equal proration between them. We reverse that part of the judgment that determined the Aetna "umbrella" policy afforded excess coverage.

The record shows that on May 26, 1971, when Diefenbach sought to lease a 1971 Buick Centurion convertible from Bauer Buick, the lease manager of Bauer, Borys, conditioned the lease on the lessee Diefenbach's securing coverage in the sum of $250,000 per person and $500,000 per accident.

Because Diefenbach had an existing policy on his 1966 Buick with State Farm, he called Robert Wilson, the agent with whom he had done business, to make the arrangements for the required insurance. Borys, Bauer's leasing manager, also talked to Wilson. Borys informed Wilson that liability coverage of $250,000/ $500,000 was needed on a 1971 Centurion on which Diefenbach wished to take delivery. Borys stated at trial that Wilson assured him that the vehicle was then insured and he would send a copy of the policy to Borys. Wilson, in his conversation with Borys, did not condition the coverage on a deposit payment or on a written application. Diefenbach also testified that he had telephoned Wilson, informing him of the required coverage. Wilson asked to speak to Borys, the lease manager, so he could confirm coverage. This, according to Borys, he did.

Wilson recalled a conversation with Diefenbach and Borys on May 26, 1971, but denied that Diefenbach had asked for coverage on the Buick Centurion convertible. He stated that the application for coverage on the Centurion was written up at least by June 1, 1971.

Diefenbach initially denied that on May 26, 1971, Wilson asked for a deposit, but later he acknowledged that Wilson had asked for a $75 deposit in order to complete the insuring of the Centurion. This testimony, although confirmatory of a request for a deposit, is di-

rectly contrary to Wilson's assertion that $250,000/
$500,000 coverage was not requested on the Centurion.

Wilson at trial finally stated that what Diefenbach
wanted was assurance that the new car would be covered
by the provisions of his prior policy on the 1966 Buick.
He denied that anyone asked for $250,000/$500,000 cov-
erage.

There seems to be substantial doubt whether any de-
posit or additional premium was paid until after the
July 4, 1971, accident.

Subsequent to the leasing date of May 26, 1971,
Diefenbach had trouble with the electrical system on the
Centurion, and on or about June 10, 1971, he was given
as a substitute leased car a Skylark. When on or about
July 1, 1971, Diefenbach expressed his dissatisfaction
with the Skylark, a smaller car, he was given an Electra
to use until his original leased vehicle, the Centurion, was
put in proper condition.

No new lease contract was executed to cover the
Electra, but Diefenbach continued to pay according
to the lease price of the Centurion. It was while driving
the Electra on July 4th that the accident occurred.

At all times relevant to this accident Bauer Buick
was insured with Aetna Insurance Company. It carried
an automobile liability policy which purported to insure
any lessee of a Bauer vehicle on the basis of $250,000/
$500,000 coverage. It also carried a "garage" liability
policy which set forth the same limits. In addition, there
was an "umbrella" policy which purported to give excess
coverage, not to exceed $1,000,000, under specified cir-
cumstances. On its face it is apparent the additional
"umbrella" coverage is applicable only to garage lia-
bility and workmen's compensation, and not to automo-
bile liability, as provided in the underlying policy.

On the basis of these facts, the jury found that there
was a policy of insurance in effect between State Farm

Automobile Insurance Company and Diefenbach on July 4, 1971, and that the coverage afforded was $250,000/ $500,000. Since only the oral contract even arguably had those particular limits, insofar as State Farm was concerned, it was the oral contract that was found to be in effect on the day of the accident.

The jury also found that the car involved in the accident came from the leasing division of Bauer Buick and not from the new car sales or garage, service, and repair divisions. This means that the only Aetna insurance applicable could be Bauer's automobile liability policy.

It is clear that the findings of the jury are supported by credible evidence. While the testimony was in dispute in respect to the May 26th phone conversation involving Diefenbach, Borys, and Wilson, there was sufficient credible evidence to support the jury's findings that Diefenbach and Wilson orally agreed to insure the leased vehicle for the $250,000/$500,000 policy limits effective immediately, and without reference to any other existing policy. It is also clear that the jury found, on the basis of sufficient facts, that the oral policy was in effect on the day of the accident.

The existence of an oral contract of insurance is a question of fact, which may be established by a jury finding supported by any credible evidence or by a court determination not contrary to the great weight and clear preponderance of the evidence. *Moore v. Suburban Mobile, Inc.*, 30 Wis.2d 527, 533, 141 N.W.2d 185 (1966). Where the facts are disputed, this court on review will defer to the fact findings of the jury or court. *Kiviniemi v. American Mutual Liability Insurance Co. of Boston*, 201 Wis. 619, 231 N.W. 252 (1930).

While all the conceivable elements of a well thought out insurance policy have not been proved, it is not denied that Wilson had authority to bind State Farm by an oral agreement. This he did by agreeing to furnish coverage

on the leased automobile immediately for $250,000/
$500,000. The duration of the coverage was not indefi-
nite; but in the absence of some agreement to the con-
trary or notice of cancellation, it was consistent with
existing policy periods for which Wilson and Diefenbach
had previously bargained, for each to implicitly assume
that the coverage period would be from at least May
26, 1971, to July 4, 1971 (the date of the accident),
and most likely for six months following the May 26th
date. Prior policies that Diefenbach had secured from
State Farm were for a six month period.

State Farm, although at trial denying the existence
of any oral agreement, on motions after verdict and on
this appeal, for the first time argued that, even though
there were an oral agreement, as found by the jury, an
escape clause in its standard policy—and in the earlier
policy on the 1966 Buick—operated to deny coverage to
a substitute non-owned vehicle.

There is nothing to establish a nexus between the oral
insurance agreement and the escape clause that appears
in other State Farm policies. Moreover, the trial judge
properly stated on motions after verdict:

". . . they claimed there was no insurance . . . that
there was a void between May and June, whenever this
new policy was requested until July 17th, when they
wrote a new policy. Now they are coming at me in a
different direction and saying that there was a policy
. . . ."

We conclude that the existence of an escape clause
was not raised at trial. From the record it is apparent
that such contention was not relevant to the position of
State Farm at trial—that no oral contract of insurance
on a leased vehicle was ever entered into.

Moreover, we consider the argument to be without
merit. State Farm contends that, even were such insur-
ance in effect at the time of the accident, the escape
clause makes the policy inapplicable for a non-owned sub-

stitute vehicle which is owned by an organization engaged in the automobile business. The argument is that the automobile involved in the accident was owned by Bauer Buick, and, therefore, coverage does not apply. This argument makes no sense, for the automobile the parties intended to insure was a leased automobile (non-owned by Diefenbach); and it would be strange, and near fraudulent, to be willing to insure the original non-owned vehicle and then claim no insurance coverage was afforded to a substitute vehicle because it was non-owned and was, in fact, owned by the same lessor as was the original vehicle.

Furthermore, the lease endorsement to State Farm's policy states that a leased motor vehicle is deemed an owned vehicle. We see no connection between the bare bones oral insuring agreement and the alleged escape clause; and were there a proved connection, the escape clause would not operate to relieve State Farm of liability.

It is apparent that this court will not import more into an oral contract than is expressed and agreed upon by the parties. If insurers desire to incorporate the provisions of their usual policies that are in derogation of the rights of the insured, such provisions must be specifically brought to the attention of the person seeking insurance at the time of the oral agreement.

The jury by sufficient evidence found that the automobile used by Diefenbach at the time of the accident came from the leasing division. Hence, the trial judge properly found that the automobile liability provisions of the Aetna policy, which afforded coverage to Bauer's lessees, applied.

We conclude, therefore, that primary coverage was afforded by the State Farm oral contract and also by the Aetna automobile policy taken out by Bauer Buick.

State Farm, by reason of being liable only on a skeletal oral contract, cannot now insist on all the provisions of

a standard insurance form that are intended to protect the insurer, i.e., that the insurance is excess only.[2]

That Aetna's automobile policy is primary is recited in its policy. The policy further states:

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under Part V for a greater proportion of the loss than that stated in the applicable contribution provision below:
"(a) . . .
"(b) . . . the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under Part V for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

■ Because the limits of the oral policy of State Farm and the automobile policy of Aetna are identical ($250,000/$500,000), the proceeds of the policies are to be prorated on an equal basis.[3]

■ It is also apparent that the Aetna "umbrella" policy does not afford excess coverage.

Endorsement 3 of the "umbrella" policy provides that:

"In consideration of the premium charged, it is understood and agreed that this policy does not apply to operation, maintenance or use of automobiles leased by the insured."

---

[2] We do not hold that the insured is denied the benefits of the standard form. That question is not presented by the facts of this case. However, we do hold that an insurer cannot rely for its protection upon a standard form when the provisions relied upon are not made clear to the insured at the time of the oral contract.

[3] Sec. 8, page 7, of the Aetna policy provides that coverage of hired and non-owned automobiles is excess. However, these are defined as those not owned or hired by the named insured, Bauer Buick.

Thus, Aetna's argument that the excess provision for hired and non-owned vehicles applies misses the obvious. Sec. 8 pertains only to those vehicles not owned or hired by Bauer Buick.

Moreover, Endorsement 4 would, even absent the escape language of Endorsement 3, preclude excess coverage except as to a loss that falls within the underlying *garage* policy. As discussed above, this loss, if covered, falls within the automobile-liability portion of the policy and not the garage-liability portion.

We have considered other errors allegedly committed in the course of the trial: That the trial court erroneously refused State Farm's request for a missing-witness instruction in respect to the nonproduction at trial of Diane Diefenbach, and that the trial court erroneously refused to admit exhibits offered by Aetna purporting to prove that the vehicle involved in the accident was not the 1971 Electra that had belonged to the wife of the president of Bauer Buick.

■ We conclude in respect to the first alleged error that it was within the discretion of the court under the facts to refuse the missing-witness instruction. *Carr v. Amusement, Inc.*, 47 Wis.2d 368, 376, 177 N.W.2d 388 (1970). Here there was no evidence that Diefenbach and Diane Diefenbach were married on the day of trial, and in fact the judge stated that there was in-chambers evidence that they were not. Nothing appears of record to show that Diane Diefenbach was more available to Joseph Diefenbach as a witness than she was to the other parties to the law suit. *Feldstein v. Harrington*, 4 Wis.2d 380, 388, 389, 90 N.W.2d 566.

In respect to Aetna's offer of affidavits concerning the identity of the vehicle involved in the accident, it is apparent that other testimony was admitted in respect to the source from whence came the automobile in the accident. *E.g.*, Borys testified that the automobile was in the service department being prepared for sale as a used car. This testimony if believed would have exonerated Aetna under the automobile policy. But the testimony was not believed by the jury.

Moreover, the specific exhibits were offered at the eleventh hour, and the judge evinced obvious displeasure

at the introduction of evidence during the course of trial that purported to establish a defense by proof of facts theretofore not referred to. While the evidence was of at least tangential relevance, the trial court could properly deny admission on the grounds now stated in sec. 904.03, Stats.:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We conclude that the trial court did not abuse its discretion. Moreover, we fail to see any evidence that prejudice occurred as the result of the exclusion, for there was other evidence which tended to prove the same facts as those set forth in the affidavits.

We also conclude that, in the entire context of the case and the instructions that underlay the verdict, special verdict questions were not erronous.

We accordingly conclude that State Farm was bound by an oral contract of insurance with limits of $250,000/$500,000, and that Aetna was bound in the same amount by the automobile policy sold to Bauer Buick and which afforded coverage to lessees of its vehicles. Each of these coverages is primary; and, hence, the loss is to be prorated. In respect to these primary coverages, the trial court was correct and the judgment is affirmed.

We conclude that the trial court erred in holding that excess coverage was offered by Aetna's "umbrella" coverage. The "umbrella" policy was inapplicable to a loss occasioned by automobile operations. The judgment in that respect must be reversed.

*By the Court.*—Judgment affirmed in part and reversed in part consistent with this opinion; cause remanded for further proceedings.

DAY, J., took no part.