Mary P. BEAHM, Individually and as Special Administrator for Estates of Kenneth R. and David J. Beahm, Plaintiff-Co-Appellant,

v.

Gary L. PAUTSCH, Valley Forge Insurance Company, Defendants-Appellants,

WILSON MUTUAL INSURANCE COMPANY, Defendant-Respondent,†

Brian D. BRASKAMP, James A. Pratt, Minnesota Mutual Fire & Casualty Company, Defendants,

Norbert F. MITTELSTADT, Integrity Mutual Insurance Company, Defendants-Co-Appellants,

STATE of Wisconsin, American Family Mutual Insurance Company, Wisconsin Physician's Service Insurance Corporation, as Administrator for the State of Wisconsin Employee Trust Fund, and the Dean Health Plan, Inc., Defendants,

William G. VAN EPERN, and Heritage Mutual Insurance Company, Defendants-Third Party Plaintiffs,

Daniel A. KOCH, and General Casualty Company of Wisconsin, Third Party Defendants-Co-Appellants,

Robert R. BYERLY, Defendant-Third Party Plaintiff-Co-Appellant,

BECKER MOTOR SERVICE, INC., Defendant-Third Party Plaintiff,

---

†Petition to review granted.

BESTWAY MOTOR FREIGHT, INC., Continental Western Insurance Company, Defendants-Third Party Plaintiffs-Co-Appellants,

CONTINENTAL WESTERN CASUALTY COMPANY, Defendant-Third Party Plaintiff,

v.

Daniel KOCH, Estate of Russell W. Kent, by Jelane D. Kent, Personal Representative for the Estate of Russell W. Kent, General Casualty Company of Wisconsin, Jon M. Schiel, Janesville Auto Transport, Roger Smerling, and Farmers Insurance Exchange, Third Party Defendants.

Court of Appeals

*No. 92–1615. Submitted on briefs May 6, 1993.—Decided December 2, 1993.*

(Also reported in 510 N.W.2d 702.)

For the plaintiff-co-appellant the cause was submitted on the briefs of *Robert L. Jaskulski* of *Domnitz, Mawicke, Goisman & Rosenberg, S.C.* of Milwaukee.

For the defendants-co-appellants the cause was submitted on the briefs of *James C. Herrick, Jr.* of *Herrick Law Office, S.C.* of Fond du Lac.

For the defendants-appellants the cause was submitted on the briefs of *Thomas A. Lorenson* of *Colwin & English, S.C.* of Fond du Lac.

For the defendant-respondent the cause was submitted on the brief of *James O. Conway* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J. This is an action to determine whether Wilson Mutual Insurance Company's farm policy provides coverage for its insured's liability in very unusual circumstances. On April 13, 1989, Wilson Mutual's insured, Brian Braskamp, set fires to burn off "winter" grass on property owned by others, allegedly with their permission. The fires became uncontrollable; smoke blew across State Trunk Highway 151 in Dodge County, obscuring the vision of motorists and contributing to a multi-vehicle accident in which Russell Kent, Kenneth Beahm and David Beahm were killed and plaintiff Mary Beahm was injured. Mary Beahm brought this action on her own behalf and as special administrator for the estates of Kenneth Beahm and David Beahm.

Braskamp and other defendants appeal from a declaratory and summary judgment determining that Wilson Mutual's policy does not cover Braskamp's liability because of the policy's pollution exclusion clause. Wilson Mutual claims that coverage is also excluded by its intentional-act exclusion clause.

We conclude that the Wilson Mutual policy's pollution exclusion clause is ambiguous and must be construed against Wilson Mutual. Therefore, the clause does not exclude coverage for Braskamp's liability. We further conclude that Braskamp's acts were not so dangerous in character that we may infer as a matter of law that he intended to injure or harm others. That inference may only be drawn by the fact finder. We therefore reverse and remand the cause for further proceedings.

579

## I.

## THE POLLUTION EXCLUSION CLAUSE

Wilson Mutual's personal liability coverage clause provides:

> **We** pay, up to **our limit**, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence**[1] to which this coverage applies. **We** will defend a suit seeking damages if the suit resulted from **bodily injury** or **property damage** not excluded under this coverage. . . . [Bold in original.]

By endorsement, Wilson Mutual substituted the following for the policy's pollution exclusion clause:

> This policy does not apply to liability which results directly or indirectly from:
>
> • the discharge, dispersal, release or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or a water course, body of water, bog, marsh, swamp or wetland.

Wilson Mutual argues that this clause unambiguously excludes coverage for Braskamp's liability for the injuries and deaths which occurred when he caused smoke to escape into the atmosphere. It argues syllogistically: Braskamp "discharge[d] . . . release[d] or [caused the] escape of smoke . . . into or upon the land,

---

[1] "Occurrence" is defined as "an accident."

[or] the atmosphere . . ."; the smoke directly or indirectly caused the deaths of and injuries to the plaintiffs; therefore, the clause excludes coverage for Braskamp's liability. Beahm argues the pollution exclusion clause is ambiguous and must be construed against Wilson Mutual.

A contract is ambiguous if it is susceptible of more than one meaning. *Wausau Underwriters Ins. Co. v. Dane County*, 142 Wis. 2d 315, 322, 417 N.W.2d 914, 916 (Ct. App. 1987). We conclude that a reasonably well-informed person could accept Wilson Mutual's syllogism, but an equally well-informed person could reject the syllogism and determine that the policy's pollution exclusion clause does not exclude coverage unless the harm or injury is caused by the toxic nature of the substance discharged into the atmosphere—an irritant, contaminant, or pollutant.

Ambiguities in insurance policies are construed against the insurer. *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 367, 488 N.W.2d 82, 89 (1992). Moreover, an exclusionary clause in an insurance policy is strictly construed against the insurer. *Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 746, 456 N.W.2d 570, 573 (1990). An insurance contract must be interpreted to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean. *School Dist. of Shorewood*, 170 Wis. 2d at 367, 488 N.W.2d at 88-89.

We look first to the language of the insurance contract to determine its meaning and resolve any ambiguity. However, the intent of the pollution exclu-

sion clause cannot be determined solely by examining that language in the context of the entire policy. We therefore consider the nature and purpose of the pollution exclusion clause: "One approach to the interpretation of a policy provision is to try [to] understand the purpose it serves and then to apply the provision in light of its purpose." KENNETH S. ABRAHAM, ENVIRONMENTAL LIABILITY INSURANCE LAW 150 (Chapter 4, Exclusions and Conditions in the CGL Policy, II B. The Purpose of the Pollution Exclusion) (1991) (hereinafter ABRAHAM).[2]

Professor Abraham states that the insurance industry became aware, during the period following a Santa Barbara, California oil spill and passage by Congress of the Clean Air Act in 1970 and the Clean Water Act in 1972, of the exposure it might face under Comprehensive General Liability (CGL) policies.[3] *Id.* at 156. In response to this concern, predecessors to the Insurance Services Office—the Insurance Rating Board and the Mutual Insurance Rating Bureau—drafted what became the pollution exclusion clause.[4] *Id.* The 1986 revision of the CGL pollution

[2] The dominant method by which insurance policies become standardized is through insurance industry practices. KENNETH S. ABRAHAM, ENVIRONMENTAL LIABILITY INSURANCE LAW 33 (1991). The Insurance Services Office and its predecessor agencies drafted and promulgated standardized insurance policies and endorsements for the insurance industry. *Id.* at 33–34.

[3] One of the standard explanations of the need for the pollution exclusion clause submitted to state insurance commissioners was that: "The . . . exclusion . . . avoid[s] any question of intent. Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident . . . ." ABRAHAM at 156-57.

[4] *Id.* The pollution exclusion clause which Wilson Mutual removed by the 1986 Amendatory Endorsement was substan-

exclusion clause was intended to clarify that the policy did not cover liability incurred by the insured for pollution damage, whether intended or accidental.[5] *Id.* at 160–63. Professor Abraham states: "The new exclusion is so broad that it is often termed 'absolute,' even though it does not exclude all pollution-related liability." ABRAHAM at 161.

Although Wilson Mutual did not substitute the CGL pollution exclusion clause for the clause contained in its policy, it did eliminate the "sudden and accidental" exception from its pollution exclusion clause. We conclude that the effect of Wilson Mutual's amendment to its policy was to exclude from coverage the insured's liability for discharging or allowing the escape of pollutants onto the land or into the atmosphere, even if the insured's act was an accident and he or she did not intend the injury or damage which resulted.

It does not follow, however, that the Wilson Mutual policy's pollution exclusion clause excludes coverage for Braskamp's liability for injuries and deaths allegedly resulting from his causing smoke to escape into the atmosphere and across State Trunk Highway

---

tively identical to the CGL exclusion clause. *See* Wilson Mutual Farm Policy ML-10, p. L-3, par. 10. For a discussion of the drafting history of the pollution exclusion clause, see S. Hollis M. Greenlaw, *The CGL Policy and the Pollution Exclusion Clause: Using the Drafting History To Raise the Interpretation Out of the Quagmire,* 23 COLUM. J.L. & SOC. PROBS. 223 (1990).

[5] The clause contained an important exception to the exclusion: "But this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." The Wisconsin Supreme Court, in *Just v. Land Reclamation, Ltd.,* 155 Wis. 2d 737, 456 N.W.2d 570 (1990), reviewed the history of the CGL pollution exclusion clause and concluded that the industry intended that "sudden and accidental" means "unexpected and unintended." *Id.* at 747-52, 456 N.W.2d at 573-75.

151. The history of the CGL pollution exclusion clause shows that the insurance industry was concerned about liability it faced from environmental accidents such as oil spills and under federal environmental legislation. Nowhere in its history is there any suggestion that the pollution exclusion clause was intended to exclude more than coverage for liability for environmental damage. We adopt the reasoning of the court in *Pepper Indus. Inc. v. Home Ins. Co.,* 134 Cal. Rptr. 904 (Cal. Ct. App. 1977). In *Pepper*, gasoline leaked into a city's sewer system, allegedly resulting in an explosion and fire. In rejecting the insurer's argument that the pollution exclusion clause excluded denied coverage for the resulting damage, the California court said:

> A fair reading of the endorsement leads to the conclusion *it was intended to exclude insurance coverage resulting from pollution and contamination of the environment,* be it land, water or the atmosphere. Although the City's sewer and pumping station may reasonably be said to fit into one or more of these categories, *the fact remains the City is not claiming its facilities were polluted or contaminated* but rather that they were destroyed or damaged by an explosion and fire.

*Id.* at 908 (emphasis added).

We conclude that Wilson Mutual's pollution exclusion clause excludes coverage only where the injury or damage is caused by the toxic nature of the irritant, contaminant or pollutant which the insured discharges or allows to escape onto land or into the atmosphere. In this case, the harm resulted from the fact that smoke is a semi-opaque substance, not from the fact that smoke may have toxic properties which may corrode property or injure a person's eyes, skin or respiratory system. We believe that a reasonable insured would under-

stand the pollution exclusion clause in Wilson Mutual's policy to exclude coverage only for liability resulting from damage or injury caused by the toxicity of smoke as an irritant, contaminant, or pollutant. Because ambiguity must be construed against the insurer, and because the nature and purpose of the pollution exclusion limits its effect to claims involving environmental damage, we hold that the Wilson Mutual policy's pollution exclusion clause does not exclude coverage for Braskamp's liability.

## II.

## THE INTENTIONAL-ACT EXCLUSION CLAUSE

Wilson Mutual also argues that because Braskamp was convicted of arson to land, contrary to sec. 26.14(8), Stats., for setting the fires, his acts were intentional and therefore subject to its policy's intentional-act exclusion clause.[6] Wilson Mutual claims that Braskamp lost his insurance coverage, even though the harm which resulted from his acts was different in degree or kind from the harm he intended. *See Pachucki v. Republic Ins. Co.*, 89 Wis. 2d 703, 278 N.W.2d 898 (1979). We conclude, however, that the intentional-act exclusion clause excludes coverage only where the insured intends the *damages or injury*

---

[6] Wilson Mutual's intentional-act exclusion clause provides:

The insurance afforded by this policy shall not apply to any damages to property or for bodily injury attributable to a willful, malicious, wanton or otherwise intentional act of the "insured" or performed at an "insured's" direction or for any outrageous conduct on the part of any "insured" consisting of any intentional, wanton, malicious acts, or, in addition, any act that would constitute wanton disregard for the rights of others.

585

intentional-act exclusion clause excludes coverage only where the insured intends the *damages or injury caused* by his or her act, not where the insured merely intends to do the act which causes the damage or injury.

Wilson Mutual cites decisions from other jurisdictions which it claims have held as a matter of law that an insured who intentionally sets fire to property has an intent to cause the harm which results. We believe these cases are in accord with Wisconsin decisions, discussed *infra* p. 587. In *West Bldg. Materials, Inc. v. Allstate Ins. Co.*, 363 So. 2d 398 (Fla. Dist. Ct. App. 1978), the court held that fire damage caused by detonation of a smoke bomb by the insured's son was not covered by a property damage liability policy which excluded coverage for damage "which is either expected or intended" by the insured. The court rejected the argument that the boy intended to cause smoke, not a fire.

*Farmers Auto. Ins. Ass'n v. Medina*, 329 N.E.2d 430 (1975), is a similar case. The court recognized that courts in Illinois and other states "have repeatedly stated the test is whether the injury was not caused intentionally but was, rather, an unintended result of an intentional act." *Id.* at 431. In *Farmer's*, a boy flipped lighted matches on a gasoline spot near or under the rear end of a parked car. The court ultimately concluded that the manifest weight of the evidence showed that the boy intended to set fire to the car and not merely to ignite the gasoline spot. *Id.* at 433.

In *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.*, 579 P.2d 1015 (Wash. Ct. App. 1978), the court construed an exclusion clause which contained the "expected or intended" language. The court found that damage to a

school building was intended by a child who set fire to a trash can within the building and therefore, the intentional-act exclusion clause excluded coverage. *Id.* at 1018.

Wilson Mutual argues that Braskamp had the intent necessary to trigger its policy's intentional-act exclusion clause. It cites *K.A.G. v. Stanford*, 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), and *Raby v. Moe*, 153 Wis. 2d 101, 450 N.W.2d 452 (1990). In *Raby*, a recent decision by the Wisconsin Supreme Court on this issue, parents brought an action against the person who shot and killed their son during an armed robbery of the liquor store where he worked. Defendant Terrance Moe was insured under a homeowner's policy issued by Heritage Mutual Insurance Company. The policy contained an exclusion for damages arising from bodily injury "expected or intended by the insured." The court adopted the rule stated in *K.A.G.*, where the court of appeals held that a court may infer an intent to injure in those narrow circumstances in which the degree of certainty that the insured's intentional conduct will cause injury is sufficient to justify the inference as a matter of law. As to this holding, the supreme court stated:

> We agree with the decision of the court of appeals in *K.A.G.*, and we believe that the rule set forth in that case is applicable whenever the criminal conduct of the insured is of such a dangerous character as to impose a substantial threat to the well-being and safety of innocent victims caught in the midst of that criminal conduct.

*Raby*, 153 Wis. 2d at 113, 450 N.W.2d at 456 (footnote omitted).

587

We conclude that Braskamp's acts of setting fires to burn off "winter" grass were not of such a dangerous character that we may conclude as a matter of law that he intended to cause the injuries and deaths which resulted. Whether he had that intent must be decided by the fact finder. "The question of whether the insured intended injury or harm to result from his intentional acts is a question of fact." *Id.* at 112, 450 N.W.2d at 456. We therefore reverse the judgment and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.