Ruth H. Laho and Kris A. Laho, Plaintiffs-Respondents,

v.

Century 21 Baltes-Selsberg, Michael C. Baltes, Jacqueline A. Baltes, and Donna Jantz, Defendants-Respondents,

Continental Casualty Company, Defendant-Appellant.†

Court of Appeals

*No. 95–1795. Submitted on briefs July 29, 1996.—Decided September 18, 1996.*

(Also reported in 555 N.W.2d 149.)

†Petition to review denied.

484

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James Samuelsen, M. Susan Maloney* and *Kevin M. Long* of *Godfrey, Braun and Hayes* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Gary W. Thompson* of *G.W. Thompson & Associates, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael J. Kelly* of *Lloyd, Phenicie, Lynch & Kelly, S.C.* of Burlington.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. Donna Jantz is a real estate salesperson affiliated with Century 21 Baltes-Selsberg. Jantz has been sued by two of her clients because of drainage problems in the land they purchased. Since the property was previously owned by the sole shareholders in the Baltes-Selsberg firm, the firm's insurer, Continental Casualty Company, claims that its errors and omissions liability policy does not cover this occurrence. We hold, however, that the clause which Continental relies on is ambiguous with respect to whether it applies to Jantz. Following the rule that ambiguous clauses in insurance contracts are construed against the drafter, we further conclude that Continental owes liability coverage to Jantz.

The facts needed to resolve this coverage question are settled. In 1988, Michael C. and Jacqueline A. Baltes acquired a vacant piece of land in Bristol, Wisconsin. They later listed the property with their

real estate firm, Century 21 Baltes-Selsberg, and had Jantz serve as the selling agent.

The subject land was sold in September 1991, and the purchasers arranged to have their home built on the property. The purchasers, however, subsequently had water problems in the basement. As a result, they filed suit against Jantz, the Balteses (as former owners) and the Baltes-Selsberg firm alleging theories of negligence, misrepresentation and breach of contract.

Continental was also named in the suit because it wrote the liability coverage for the Baltes-Selsberg firm. However, Continental questioned whether it owed coverage because the subject property had been owned by the firm's principals. Continental filed a motion for declaratory judgment to resolve this coverage dispute.

The circuit court denied Continental's motion and ruled that the policy provided coverage to all of the defendants. This court later granted Continental's petition for leave to appeal the nonfinal order.

This appeal involves two main issues. One is the validity of an exclusion within Continental's policy which seemingly bars coverage when a firm member owns the transferred property. Depending on the validity of this clause, the second issue involves whether it applies to all members of the Baltes-Selsberg firm.

We will independently review the circuit court's ruling. A claim that summary judgment was improperly granted is a question of law which we review de novo. *See generally Preloznik v. City of Madison*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983). The interpretation of an

insurance agreement is likewise a question of law subject to our de novo scrutiny. *See Paper Mach. Corp. v. Nelson Foundry Co.*, 108 Wis. 2d 614, 619, 323 N.W.2d 160, 163 (Ct. App. 1982). We will decide the two issues in reverse order.

The parties all point to the same two clauses in Continental's policy and contend that the resolution of the coverage dispute turns on how they are interpreted. The first clause is from the "definitions" section of Continental's policy; it states that the words "you" or "your" mean:

A. the entity named on the Declarations of this policy as the Named Insured;
B. any of **your**:

 1. partners, if **you** are a partnership; or
 2. executive officers, directors, administrators, or stockholders if **you** are a corporation;
 3. brokers, agents, employees, salespersons, or common law or statutory independent contractors;

. . . .

The second clause is the specific clause which Continental is trying to enforce—exclusion "O." It is set out in the "exclusions" section of this policy and when read with the general language of that section it provides:

We will not defend or pay under this policy for:

. . . .

O. any **claim** arising from the purchase, sale or property management of property developed, constructed or owned by:

1. **you**; or
2. any entity in which **you** have a financial interest or has a financial interest in **you**; or
3. any entity coming under the same financial control as **you**.

 . . . .

We will now detail the respective arguments regarding how we should interpret these provisions.

According to Continental, these terms are plain, unambiguous and can only be construed to mean one thing: "Exclusion O' will preclude coverage for all insureds if one insured owns the property at issue." It argues that the exclusion precludes coverage to any person associated with the firm if that person will financially benefit from the sale of the property.

To arrive at this construction, Continental simply inserts the meaning of the word "you," which includes the agency and all its employees and salespeople, into the first part of exclusion "O," which states that the policy does not apply when the property involved is owned by "you." Thus, in Continental's mind, exclusion "O" is written to inform insureds that the policy does not apply when the transaction involves a piece of property that they own personally, *or* is owned by anyone else associated with their firm.

On the other side, Jantz, the Balteses and the suing purchasers contend that the simple construction which Continental places on exclusion "O" is confused by the additional language which describes how involvement of other parties in the transaction—"any entity in which **you** have a financial interest"—will also render the policy ineffective. Although the language in the definitions section of the policy already describes "you" to broadly include all persons

associated with the real estate firm (the agents, partners and shareholders), the additional language added to this exclusion makes it appear that it is only directed to the firm which is the named insured. As a result, a reasonable person who is covered under the policy could well believe that the word "you" in this clause does not mean the same thing that the word "you" means in other parts of the policy.

■

The test we employ to determine if policy language is ambiguous is whether it is susceptible to more than one reasonable construction. *See Berg v. Schultz*, 190 Wis. 2d 170, 175, 526 N.W.2d 781, 782 (Ct. App. 1994). We agree with the argument that the additional language in exclusion "O" invites its readers to ask whether they, or something they have a "financial interest" in, own the property. Thus, hypothetically, one of the firm's real estate agents who is covered under this policy would ask, "Do I, or any of my related enterprises, own this property?" When this answer is "no," this curious insured would feel secure knowing that this exclusion does not apply to him or her.

■

We reject Continental's response that the "financial interest" language does not create ambiguity because the firm has such a "financial interest" in its real estate agents and employees. This policy was designed to provide coverage for the firm as the named insured and for the firm's real estate agents and employees. Accordingly, we must construe it with an eye toward what a reasonable real estate agent would interpret exclusion "O" to mean. So were we to accept Continental's argument regarding the meaning of "financial interest," we would have to accept that our hypothetically curious and reasonable real estate

489

agent that we described above would ordinarily define the relationship with his or her employing firm as a sharing of "financial interests." This construction, however, is too awkward and violates the canon requiring courts to rely on the common and ordinary meaning of terms. *See Koshiol v. American Family Mut. Ins. Co.,* 171 Wis. 2d 192, 195, 491 N.W.2d 776, 777 (Ct. App. 1992).

Since exclusion "O" is ambiguous, we will apply the rule that ambiguous terms in insurance contracts are construed in favor of coverage. *See Schroeder v. Blue Cross & Blue Shield,* 153 Wis. 2d 165, 173, 450 N.W.2d 470, 473 (Ct. App. 1989). While Continental nonetheless urges that we should not apply this rule until we exhaust all other rules of interpretation, *see Thompson v. Threshermen's Mut. Ins. Co.,* 172 Wis. 2d 275, 282, 493 N.W.2d 734, 737 (Ct. App. 1992), it has not made us aware of any rule of construction under which we could conclude that the meaning of exclusion "O" is clear. We therefore affirm the component of the circuit court's order denying Continental's claim that it did not owe coverage to Jantz.

We now turn to the second broad issue in this appeal: whether this exclusion is ambiguous with regard to the other parties who it is designed to provide coverage for. Here, contrary to the conclusion of the circuit court, we do not believe that the meaning of this clause would be ambiguous to every class of persons that it is directed to. As the Balteses (as individuals) and the Baltes-Selsberg firm correctly concede in their briefs to this court, exclusion "O" is not ambiguous with regard to whether they are covered. The terms of this exclusion would inform the reasonable person in their

position that they are not covered. The language describing "financial interest" would not create ambiguity for the Balteses (and their firm) because they are the named insured on the policy. A reasonable person in this position would interpret this clause to exclude coverage for incidents involving his or her property and the property of any related enterprises in which he or she has a "financial interest." We therefore reverse the component of the circuit court's order which denies summary judgment to Continental on the coverage issues involving the Balteses and the Baltes-Selsberg firm. Continental has no coverage responsibility to these defendants.

*By the Court.*—Order affirmed in part and reversed in part.