Ronald BINON, Catherine Binon, Melissa Binon, a minor, by her Guardian ad Litem, Attorney M. Angela Dentice, and Melinda Binon, a minor, by her Guardian ad Litem, Attorney M. Angela Dentice, Plaintiffs-Respondents,

The MILWAUKEE CARPENTERS DISTRICT COUNCIL HEALTH FUND and American Family Mutual Insurance Company, Plaintiffs,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY, Defendant-Appellant,†

GREAT NORTHERN INSURANCE COMPANY, Sells Printing Company, Erick Schroeder, Andy Honkamp and John Honkamp, Defendants,

FEDERAL INSURANCE COMPANY, Defendant-Respondent,

UNIVERSAL UNDERWRITERS INSURANCE COMPANY and Arrow Motors, Inc., d/b/a Lease Associates Group, Intervening-Defendants-Respondents.

Court of Appeals

*No. 97–0738. Submitted on briefs January 26, 1998.—Decided March 25, 1998.*

(Also reported in 580 N.W.2d 365.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Culhane* and *Susan G. Schellinger* of *Davis & Kuelthau* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *M. Angela Dentice* and *David J. Bischmann* of *Hausmann-McNally, S.C.* of Milwaukee; on behalf of defendant-respondent, the cause was submitted on the briefs of *Burton A. Strnad* of *Burton A. Strnad, S.C.* of Milwaukee; and on behalf of intervening-defendants-respondents, the cause was submitted on the briefs of *David H. Hutchinson* of *Machulak Hutchinson,* et al. of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J.   Philadelphia Indemnity Insurance Company appeals from a summary judgment finding coverage for John Honkamp, who leased vehicles from Arrow Motors, Inc., d/b/a Lease Associates Group, under a commercial automobile policy that Philadelphia Indemnity had issued to Arrow Motors for several of its "preferred customers."[1] Philadelphia Indemnity challenges the circuit court's conclusions

---

[1] In a separate appeal, No. 97–0710, the Binons appeal from that portion of a summary judgment dismissing Federal Insurance Company, Universal Underwriters Insurance Company and Arrow Motors. In an unpublished order dated June 27, 1997, this court consolidated the two cases. However, No. 97–0710, in which we partially affirm the summary judgment, is being released as a separate opinion. *See Binon v. Federal Ins. Co.*, 218 Wis. 2d 26, 580 N.W.2d 370 (Ct. App. 1998).

that its policy terms are ambiguous; that the policy includes Honkamp, a lessee of Arrow Motors, as a named insured; and that the Jeep qualifies as a "temporary substitute" vehicle. We also conclude that Philadelphia Indemnity's policy is ambiguous and, as such, the ambiguous terms are construed in favor of coverage. We affirm.

## FACTS

The underlying facts are undisputed. On November 8, 1994, a 1993 Jeep Cherokee driven by Andy Honkamp collided with an automobile driven by Ronald Binon, in which Catherine, Melissa and Melinda Binon were passengers. John Honkamp, Andy's father, leased four vehicles, including a 1991 Pontiac Sunbird, from Arrow Motors which also procured collision, liability and comprehensive insurance through Philadelphia Indemnity for all four vehicles. While Honkamp's Sunbird was in the garage for service, Arrow Motors loaned him the Jeep and he gave Andy permission to drive it. The Jeep which is titled to Arrow Motors had been turned in at the expiration of another lease and was waiting to be sold.

At the time of the accident, Arrow Motors had four insurance policies in force: a commercial auto policy issued by Philadelphia Indemnity, a garage liability policy issued by Universal Underwriters Insurance Company and a business auto and an excess policy issued by Federal Insurance Company. The Philadelphia Indemnity policy, at issue in this appeal, was a "primary lease policy" that allowed Arrow Motors to procure $500,000 in primary auto coverage for "preferred customers" for vehicles which Arrow Motors owned but were under a lease contract with the "preferred customers" for twelve months or more. Arrow

41

Motors was the named insured; the lessees were classified as permissive operators. However, premiums were based upon where the lessee garaged the vehicle, the lessee's driving record and were calculated on a per-car per-month basis. Lessees were billed monthly and would pay Arrow Motors the premium which would in turn pay Philadelphia Indemnity.

Coverage under the Philadelphia Indemnity policy was limited to insuring the lessee while driving either the leased vehicle or a "temporary substitute" for the leased vehicle. The policy also required Arrow Motors to complete an add/delete form for each vehicle to be included on the policy. The form was never completed for the Jeep.

In April 1995, the Binons filed this civil action.[2] Philadelphia Indemnity moved to bifurcate the insurance coverage issue from the liability and damages issue and to stay all proceedings until the issue of insurance coverage could be determined. Next, motions for summary judgment were filed by Universal, Philadelphia Indemnity, Federal and Arrow Motors. The

---

[2] The Binons' suit actually alleged two causes of action relating to two separate accidents. The Binons later filed three amended complaints. The first joined American Family Mutual Insurance Company and Provident Life and Accident Insurance Company, which was later dismissed, as additional subrogated plaintiffs and added Universal, which issued a garage liability insurance policy to Arrow Motors, as an intervening defendant. Arrow Motors moved to intervene as a party defendant and the Binons' second amended complaint joined Arrow Motors, the owner of the Jeep Cherokee, as an additional intervening defendant. The third added Federal, which provided primary and excess coverage for automobiles owned by Arrow Motors, as an additional defendant. The first accident involved Erick Schroeder, Great Northern Insurance Company and Sells Printing Company and is not before this court on appeal.

circuit court denied Philadelphia Indemnity's motion and granted the motions of Universal, Federal and Arrow Motors. Philadelphia Indemnity appeals.[3] Additional facts will be included within the body of the decision as necessary.

## STANDARD OF REVIEW

■

When facts are undisputed and the issue involves only the interpretation of an insurance policy, a question of law is presented for which resolution on summary judgment is appropriate. *See Smith v. State Farm Fire & Cas. Co.*, 127 Wis. 2d 298, 301, 380 N.W.2d 372, 374 (Ct. App. 1985). An appeal from a grant of summary judgment raises an issue of law which we review de novo by applying the same standards employed by the trial court. *See Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 (Ct. App. 1994). The interpretation of an insurance contract also presents a question of law which we review without deference to the trial court. *See Keane v. Auto-Owner's Ins. Co.*, 159 Wis. 2d 539, 547, 464 N.W.2d 830, 833 (1991).

## DISCUSSION

Philadelphia Indemnity claims that since the Jeep was owned by Arrow Motors, the named insured, it

---

[3] Arrow Motors and Philadelphia Indemnity stipulated that judgment could be entered in favor of Arrow Motors and against Philadelphia Indemnity for fees and expenses totaling $11,340.91, but that Arrow Motors will stay execution of the judgment until the insurance coverage issue is conclusively resolved by the courts.

cannot qualify as a "temporary substitute" vehicle.[4] Philadelphia Indemnity's position is that the terms "you" and "your" in its policy unambiguously refer to the named insured shown on the declarations page—Arrow Motors—and does not include the preferred customer lessees like Honkamp. The Binons and Universal, on the other hand, argue that the manner in which the words "you" and "your" are used inconsistently throughout the policy, including the temporary substitute provision, renders these terms ambiguous and should be construed in favor of coverage.

The preamble to the business auto coverage form clearly states: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The named insured in the declarations is "Arrow Motors, Inc. dba Lease Associates Group dba Eileers Leasing."

However, certain endorsement changes to the policy which use the terms "you" or "your" only make sense if they refer to the lessees and not Arrow Motors. For instance, the reporting and premium endorsement which states: "You will allow us to inspect each covered

---

[4] Philadelphia Indemnity also argues that in order for a vehicle to be covered under its policy, the vehicle must be owned by the named insured, it must be leased to others for twelve months or more and it must be on record with Philadelphia Indemnity. Because the Jeep does not meet the second or third criterion, Philadelphia Indemnity insists it is not a covered vehicle. This argument misses the mark. The Jeep was loaned to the Honkamps as a temporary substitute automobile, not as an insured auto under lease to Honkamp. As the Binons aptly point out, "If the Jeep is a temporary substitute vehicle, by definition it would not have to be listed as a covered vehicle. . . . [T]he substitute automobile becomes the 'covered' vehicle."

auto" obviously refers to the lessees who were in possession of the insured vehicles.

Similarly, the business auto conditions requiring "you" to provide Philadelphia Indemnity with medical information, to submit to an examination under oath and to provide a statement upon request in case of an accident or loss also refer to the lessee. Because the lessees are in possession of the insured vehicles during an accident or loss, what purpose would it serve to have Arrow Motors, whose personnel do not have first-hand knowledge of the accident or loss, provide this information?

Lastly, the Wisconsin endorsement provides that if "your business is selling, servicing, repairing or parking 'autos' ", the insured is changed to include anyone other than an officer of such business, but the coverage is limited to the minimum required by Wisconsin law. *See* § 632.32, STATS. If the "you" in this provision refers to Arrow Motors, then the policy which purports to, and Philadelphia Indemnity agrees was established to, provide $500,000 in primary liability coverage would be reduced to the minimums required by Wisconsin law. Such a result would constitute fraud; surely that is not what Philadelphia Indemnity intended. In each example, the provisions only make sense if the term "you" or "your" refers to the lessees.

The test we employ to determine if policy language is ambiguous is whether it is susceptible to more than one reasonable construction. *See Laho v. Century 21 Baltes-Selsberg*, 204 Wis. 2d 483, 489, 555 N.W.2d 149, 151 (Ct. App. 1996). We conclude that when read in its entirety Philadelphia Indemnity's policy is ambiguous. A reasonably informed person could accept Philadelphia Indemnity's position that "you" and "your" only

refers to the named insured, Arrow Motors, but an equally well-informed person could reject this rationale and determine that "you" and "your" in the policy refers to the insured lessees.

The provision at issue here, Philadelphia Indemnity's temporary substitute autos provision, is equally ambiguous. This provision provides in part:

### C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

. . . .

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

  a. Breakdown;

  b. Repair;

  c. Servicing;

  d. "Loss"; or

  e. Destruction.

Again, a reasonably informed person could accept Philadelphia Indemnity's contention that "you" refers to Arrow Motors, but an equally well-informed person could reject this position and determine that "you" refers to the lessees and their insured vehicles.

Ambiguities in insurance policies are to be construed against the insurer. *See Beahm v. Pautsch*, 180

Wis. 2d 574, 581, 510 N.W.2d 702, 705 (Ct. App. 1993). An insurance contract must be interpreted to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean. *See id.* We look to the language of the insurance contract to determine its meaning and resolve any ambiguity. *See id.* When interpreting a policy provision, we should " 'try [to] understand the purpose it serves and then . . . apply the provision in light of its purpose.' " *Id.* at 582, 510 N.W.2d at 705 (quoted source omitted).

Our supreme court has stated that the purpose of the temporary substitute auto provision is to

> extend coverage temporarily and automatically, without the payment of an additional premium, to the insured to protect him [or her] when he [or she] uses an automobile not specified in the policy in place of the specified motor vehicle he [or she] intended normally to use but did not because of its withdrawal from use for a reason stated in the policy.

*Lewis v. Bradley,* 7 Wis. 2d 586, 591, 97 N.W.2d 408, 411 (1959). If we follow Philadelphia Indemnity's rationale, the temporary substitute auto provision does not provide coverage for Philadelphia Indemnity's insured lessees because Arrow Motors owns the Jeep and the provision requires nonownership. Yet, the Jeep was a temporary substitute for a covered auto, the Sunbird, that was in fact withdrawn from use for servicing. "A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with

47

the general intent." *Inter-Insurance Exch. v. Westchester Fire Ins. Co.*, 25 Wis. 2d 100, 106, 130 N.W.2d 185, 188 (1964). Because the temporary substitute auto provision is ambiguous and because Philadelphia Indemnity's interpretation violates the purpose of and effectively neutralizes the provision, we construe the policy in favor of coverage. *See Laho*, 204 Wis. 2d at 490, 555 N.W.2d at 151–52.

Our determination is consistent with Wisconsin case law. The court in *Roeske v. Diefenbach*, 75 Wis. 2d 253, 249 N.W.2d 555 (1977), looked at a situation quite similar to the one before us. In *Roeske*, the insured leased a 1971 Buick Centurion convertible from Bauer Buick. *See id.* at 256, 249 N.W.2d at 557. The insured obtained oral assurances from his insurance agent that the new car would be covered by the provisions of his existing policy on his 1966 Buick. *See id.* at 256–57, 249 N.W.2d at 557–58. After leasing the Centurion, the insured brought it in for repairs and was given an Electra until his original leased vehicle was fixed. *See id.* at 257, 249 N.W.2d at 558. While driving the Electra, he was in an accident.

The jury found that there was an oral agreement to insure the leased vehicle effective immediately and that the policy was in effect on the day of the accident. *See id.* at 258, 249 N.W.2d at 558. On appeal, the insurance company, for the first time, argued that even though there was an oral agreement, as found by the jury, an escape clause operated to deny coverage to a substitute nonowned vehicle. *See id.* at 259, 249 N.W.2d at 559. The supreme court concluded that the insurance company waived this argument by not raising it at trial. *See id.*

The court further noted that the argument was without merit:

> The argument is that the automobile involved in the accident was owned by Bauer Buick, and, therefore, coverage does not apply. This argument makes no sense, for the automobile the parties intended to insure was a lease automobile (non-owned by [the insured]); and it would be strange, and near fraudulent, to be willing to insure the original non-owned vehicle and then claim no insurance coverage was afforded to a substitute vehicle because it was non-owned and was, in fact, owned by the same lessor as was the original vehicle.

*Id.* at 260, 249 N.W.2d at 559.

Here, Philadelphia Indemnity and the lessees intended to insure the lessees' vehicles, i.e., the Sunbird, which were nonowned by the insured lessees. The intent was to provide $500,000 primary liability coverage for the lessees on their leased vehicles. However, now Philadelphia Indemnity claims that coverage is not extended to a substitute vehicle because it is owned by the named insured, Arrow Motors. As in *Roeske*, Philadelphia Indemnity is willing to insure the original nonowned vehicle of a "permissible" operator—the lessee (which is owned by the named insured), but then claims no insurance coverage for a temporary substitute vehicle because it is owned by the named insured. It is simply unreasonable that the lessees for whom the policy was intended, and who were operating the covered vehicles to which the temporary substitute auto provision applied, would not be considered the named insured in the context of the temporary substitute auto provision. *Roeske* so dictates.

We further conclude that the cases cited by Philadelphia Indemnity are distinguishable. In *Luckett v. Cowser*, 39 Wis. 2d 224, 226, 159 N.W.2d 94, 95 (1968), the insured had two vehicles; when the original vehicle

became inoperable, he purchased a second vehicle with which he had an accident. The supreme court determined that the temporary substitute auto provision was not applicable because the insured owned the vehicle and that the "newly acquired automobile" clause automatically afforded coverage. *See id.* at 228–30, 159 N.W.2d at 96–97. The key differences are that the insured owned the vehicle, whereas in this case, the insured leased the vehicle and the Luckett policy was not deemed ambiguous, whereas the Philadelphia Indemnity's policy was.

Philadelphia Indemnity also looks to *Lewis*, 7 Wis. 2d at 595, 97 N.W.2d at 413, as support, wherein the court noted that "[t]he temporary-substitute-automobile coverage is expressly limited to exclude only an automobile owned by the name insured." Again, *Lewis* did not involve a leasing situation; rather, the insured owned the original insured vehicle, a Plymouth, and was temporarily using an alternative vehicle, his father's truck, because the Plymouth was inoperable. *See id.* at 588, 97 N.W.2d at 410. In addition, the policy terms were not ambiguous.

Moreover, Philadelphia Indemnity ignores the court's statement in *Lewis* that the purpose of a temporary substitute vehicle provision is "to extend coverage temporarily and automatically, without the payment of an additional premium, to the insured to protect him [or her] when he [or she] uses an automobile not specified in the policy in place of the specified motor vehicle he [or she] intended normally to use but did not because of its withdrawal from use for a reason stated in the policy." *Id.* at 591, 97 N.W.2d at 411. Again, the interpretation of an insurance policy should not neutralize a provision if the contract is susceptible of another construction which gives effect to all of its pro-

visions and is consistent with the general intent. *See Inter-Insurance Exch.*, 25 Wis. 2d at 106, 130 N.W.2d at 188. Philadelphia Indemnity's policy was intended to provide primary liability coverage to Arrow Motors' lessees and Arrow Motors' lessees paid the premiums. Thus, case law also dictates that the temporary substitute automobile coverage automatically extends, without payment of an additional premium, to the Honkamps when using the Jeep, which is not specified in the policy, while the Sunbird is being serviced.

*By the Court.*—Judgment affirmed.